Michael J. Rod and Charlene Rod, Plaintiffs-Respondents-Petitioners,

v.

Thomas FARRELL, M.D., Defendant-Appellant.†

Supreme Court

*No. 77–681. Argued March 4, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 568.)

For the respondents-petitioners there was a brief by *Weisfeldt & Weisfeldt* of Milwaukee; and *Alan M. Clack* of Racine, and oral argument by *Robert Bichler* of Racine.

For the appellant there were briefs by *Peterson, Antoine & Peterson* of Prairie du Chien; and *Daniel T.*

† Motion for reconsideration denied, with costs, on June 9, 1980.

*Flaherty, Maureen L. Kinney* and *Johns, Flaherty & Gillette, S.C.,* and oral argument by *Daniel T. Flaherty,* all of La Crosse.

PER CURIAM.   This is a medical malpractice claim. Plaintiff Michael J. Rod was born January 24, 1951. On May 17, 1955, defendant, Dr. Thomas Farrell, performed a surgical repair of a congenital hernia on plaintiff.   At the time of the operation, apparently no one had any knowledge of any difficulty or problems with the operation.   Plaintiff married in 1974.   In September, 1975, he underwent exploratory surgery in an attempt to discover the cause of his wife's failure to become pregnant.   The exploratory operation revealed that portions of plaintiff's vasa had been surgically removed and he was permanently sterile.   For the purposes of appeal, we may assume that the plaintiff's medical history excludes any intervening cause for the severed vasa and that the defendant did sever plaintiff's vasa at the time of the 1955 hernia surgery.   Plaintiff commenced the action on October 12, 1976, which was approximately twenty-one years after the severance of his vasa, seven years after he had attained the age of eighteen, and one year after he discovered that the vasa had been severed. The circuit court denied defendant's motion for summary judgment, and he appealed.   The court of appeals reversed the circuit court's order relying on decisions of this court holding that the statute of limitations in medical malpractice cases begins to run from the time the negligent act occurs and the accompanying injury results, not from the date of the discovery of the injury.[1]

Sec. 893.14, Stats., the introductory section to sec. 893.-205 and to other statutes of limitation, provides that ac-

---

[1] *Rod v. Farrell,* Case No. 77–681, unpublished opinion, dated and released October 31, 1978.

tions must be commenced within the periods prescribed "after the cause of action has accrued."[2] Sec. 893.205 requires that an action to recover damages for injuries to a person be commenced within three years.[3]

---

[2] Sec. 893.14, Stats.:

"893.14 **Actions, time for commencing.** The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued except that the period shall not be considered to have expired when the court before which the action is pending shall be satisfied that the person originally served knowingly gave false information to the officer with intent to mislead him in the performance of his duty in the service of any summons or civil process. In the event the court so finds the period of limitation shall be extended for one year."

*See also,* sec. 893.48, Stats.:

"893.48 **Computation of time, basis for.** The periods of limitation, unless otherwise specially prescribed by law, must be computed from the time of the accruing of the right to relief by action, special proceedings, defense or otherwise, as the case requires, to the time when the claim to that relief is actually interposed by the party as a plaintiff or defendant in the particular action or special proceeding, except that as to a defense, set-off or counter-claim the time of the commencement of the plaintiff's action shall be deemed the time when the claim for relief as to such defense, set-off or counterclaim is interposed."

[3] Sec. 893.205, Stats.:

"893.205 **Within 3 years.** Within 3 years:

"(1) An action to recover damages for injuries to the person for such injuries sustained on and after July 1, 1955, unless notice in writing as provided in s. 330.19(5), 1955 statutes, was served prior to July 1, 1959, in which event s. 330.19(5), 1955 statutes, shall apply. But no action to recover damages for injuries to the person, received without this state, shall be brought in any court in this state when such action is barred by any statute of limitations of actions of the state or country in which such injury was received unless the person so injured shall, at the time of such injury, have been a resident of this state.

"(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another where death resulted on or after July 1, 1955.

"(3) Any civil action arising under ch. 11 or subch. III of ch. 13."

The word accrued is not defined by statute. This court has held that a cause of action for personal injuries due to medical malpractice accrues, and therefore the statute of limitation begins to run,[4] "at the time the negligent act occurs with accompanying injury." *Peterson v. Roloff,* 57 Wis.2d 1, 4, 203 N.W.2d 699 (1973). *See also Reistad v. Manz,* 11 Wis.2d 155, 105 N.W.2d 324 (1960),

---

[4] In this case the patient was a minor and special rules relating to minors are applicable. *See, e.g.,* sec. 893.33, Stats. 1975, which provided:

"**893.33 Persons under disability.** If a person entitled to bring an action mentioned in this chapter, except actions for the recovery of a penalty or forfeiture or against a sheriff or other officer for an escape, or for the recovery of real property or the possession thereof be, at the time the cause of action accrued, either

"(1) Within the age of 18 years; or

"(2) Insane; or

"(3) Imprisoned on a criminal charge or in execution under sentence of a criminal court for a term less than his natural life, the time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended more than 5 years by any such disability, except infancy; nor can it be so extended in any case longer than one year after the disability ceases."

In 1977, sec. 893.235, Stats., was enacted which decreased the time in which a minor may bring an action and recover damages for personal injury against health care providers:

"**893.235 Health care providers; minors actions.** Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by, a person who is licensed, certified, registered or authorized to practice as a health care provider under state law within the time limitation under s. 893.205(1) or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section."

*McCluskey v. Thranow*, 31 Wis.2d 245, 142 N.W.2d 787 (1966), *Volk v. McCormick*, 41 Wis.2d 654, 165 N.W.2d 185 (1969), and *Olson v. St. Croix Valley Memorial Hospital*, 55 Wis.2d 628, 201 N.W.2d 63 (1972). Applying this rule to the present case, the court of appeals held that the cause of action accrued when plaintiff's vasa were cut by defendant on May 17, 1955, despite the fact that the plaintiff was not aware of his injury until 1975.

We have described the conflicting public policies involved in determining the appropriate time to start the running of the statute of limitations as follows:

"(1) That of discouraging stale and fraudulent claims, and (2) that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained." *Peterson v. Roloff, supra,* 57 Wis.2d at 6.

Although this court has recognized the injustice of commencing the running of the period of limitations at a time when the injured party was not aware of his right of action, and although this court has recognized that many states have adopted by court decision the "discovery rule," *i.e.*, that the cause of action accrues when the alleged injury is discovered or should have been discovered,[5] we have repeatedly stated that "if a change in the statute of limitations was in order, the legislature was the proper body to make that change. . . . [W]e believe that the change of the statute of limi-

---

[5] Restatement (Second) of *Torts* sec. 899, Comment, *pp.* 444–45 (1977), explains that the trend in both the legislatures and the courts has been to provide that the period of limitations does not begin until the injured person has knowledge or reason to know of the injury.

For the United States Supreme Court's interpretation of the phrase "claim accrues" in the Federal Tort Claims Act in medical malpractice cases, *see United States v. Kubrick*, 444 U.S. 111, 121, 100 S. Ct. 352, 358 (1979).

tations is peculiarly a question of policy which should be left to the legislature to make if so convinced." *Peterson v. Roloff, supra,* 57 Wis.2d at 5–6. *See also Rosenthal v. Kurtz,* 62 Wis.2d 1, 10, 213 N.W.2d 741, 216 N.W. 2d 252, *Reistad v. Manz, supra,* 11 Wis.2d at 159–160.

In 1973 this court recommended to the legislature that the basic three-year statute of limitations for negligence actions due to medical malpractice be amended because the three-year requirement is too short. *Peterson v. Roloff, supra,* 57 Wis.2d at 7. Thereafter several bills were introduced in the legislature to change the basic three-year statute of limitations applicable to medical malpractice suits.[6] None of these bills passed. In its last session, the legislature again considered bills which would adopt the discovery rule.[7]

---

[6] *See, e.g.,* S.B. 166, 1975 Sess.; A.B. 54, 1975 Sess.; S.B. 190, 1973 Sess.; A.B. 1049, 1973 Sess.; and A.B. 652, 1973 Sess.

[7] A.B. 326, 1979 Sess.:* A.B. 327, 1979 Sess. *A.B. 326 was adopted as ch. 323, Laws of 1979, effective July 1, 1980. Sec. 893.-55, Stats., provides:

"893.55 **Limitation of actions; medical malpractice.** (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

"(a) Three years from the date of the injury, or

"(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

"(2) If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1), whichever is later.

"(3) When a foreign object which has no therapeutic or diagnostic purpose or effect has been left in a patient's body, an action shall be commenced within one year after the patient is aware or, in the exercise of reasonable care, should have been aware of the

It is clear from this legislative history that the legislature is aware of the problem of the statute of limitations in medical malpractice actions and is struggling with the policy issues involved. Nothing has been said in the case at bar to persuade us that we should overturn our long-established construction of the statute when the legislature has considered the matter and has acquiesced in or has failed to change our construction of the statute. In *Green Bay Packaging, Inc. v. ILHR Dept.,* 72 Wis.2d 26, 32, 240 N.W.2d 422 (1976), we said that "for years this court has followed the rule that where the court has placed a certain construction upon a statute, such construction becomes a part of the statute and subsequent legislative inaction is deemed to be approval of such construction."

The plaintiff argues that the present interpretation of the statute violates Art. I, sec. 9, of the Wisconsin Constitution,[8] relying on a concurring opinion in a case decided by the Supreme Court of Pennsylvania, *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788, 794–95 (1959). This concurring opinion concluded that the "discovery rule" was required by a provision of the Pennsylvania Constitution similar to Art. I, sec. 9 of our constitution because any other rule precluded a reasonable opportunity for one who has been harmed to make his claim.

This court has said that although Art. I, sec. 9, Wisconsin Constitution, guarantees a suitor a day in a court of competent jurisdiction to which he may present his claim, the statute of limitations may bar a plaintiff's

presence of the object or within the time limitation provided by sub. (1), whichever is later."

[8] Art. I, sec. 9, of the Wisconsin Constitution states:

"**Remedy for wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

action and the defending party may rely on the statutory bar. *See Reistad v. Manz,* 11 Wis.2d 155, 159, 105 N.W. 2d 324 (1960); *Ortman v. Jensen & Johnson, Inc.,* 66 Wis.2d 508, 521, 225 N.W.2d 635 (1975). Nevertheless, we have cautioned that a statute of limitations might offend Art. I, sec. 9, Wisconsin Constitution, if it extinguished a claim of a potential plaintiff before that plaintiff suffered an injury. *Rosenthal v. Kurtz,* 62 Wis. 2d 1, 8, 213 N.W.2d 741 (1974); *Kallas Millwork Corp. v. Square D. Co.,* 66 Wis.2d 382, 393, 225 N.W.2d 454 (1975).

In the instant case, however, the plaintiff's injury occurred at the time of the operation. Many years have elapsed before the statute of limitations barred plaintiff's claim. Consequently, we conclude that the statute of limitations does not violate Art. I, sec. 9, Wisconsin Constitution.

Plaintiff further asserts that if the court does not adopt the discovery rule he will be deprived of due process guaranteed by the federal constitution. This argument is similar to the one made under Art. I, sec. 9 of the state constitution, and we find it similarly unpersuasive.

In *Clark v. Gulesian,* 429 F.2d 405, 406 (1st Cir. (1970), the plaintiff-patient argued that he was denied equal protection and due process when his malpractice action was barred by the Maine statute of limitations under which the cause of action accrued at the time of the negligent act. The federal court of appeals dismissed the federal constitutional claims on grounds similar to the ones considered by this court in dismissing plaintiff's federal and state constitutional claims, saying

"Plaintiff's first argument on this appeal is that the Maine statute, as interpreted and applied in *Tantish* [*v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962)] is unconstitutional as a denial of equal protection and due process. For this novel contention he cites no direct authority of any sort. While state courts disagree in their

approach as to when, under circumstances such as these, the cause of action accrues, defendant points out that no majority opinion has based its decision on constitutional grounds. For a recent review of authorities see *Flanagan v. Mount Eden General Hospital,* 1969, 24 N.Y. 2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (adopting a contrary rule). As we pointed out in *Tessier, supra,* at 269 F.2d 310, this is a policy decision. The rights are not one-sided. Unfortunate as the present result may be for the plaintiff, the state may reasonably recognize that a defendant has an interest in repose, and in the avoidance of stale claims, however free from fault the claimant's delay may be. Such a conclusion does not deprive the plaintiff of any constitutional right to fair or equal treatment."

For the reasons set forth, the decision of the court of appeals is affirmed.

COFFEY, J. (concurring). How long after retirement should a doctor have to carry malpractice insurance? The statute of limitations defense, successfully raised against a meritless case, will save the retired doctor large amounts of attorneys' fees which he would otherwise have to pay to defend and win after a trial. The discovery rule insures that a trial, with its attendant expense, will be held in every case.

The affidavit of Dr. Farrell, submitted in support of his motion for summary judgment, stated:

"From the time I commenced practicing in 1935, through the year 1955 and thereafter I was doing a considerable amount of traumatic surgery and I was also doing elective surgery including herniorrhaphy on a routine basis. At that time injury to the vasa was well recognized as a possible complication in hernia surgery of the type I was doing on Michael. It was one of the dangers I was aware of and was trying hard to avoid. The possibility of such an injury occurring unintentionally and unknowingly is increased when the patient is a small child as was Michael. In addition, there are ana-

tomical variations from person to person which are complicating factors, particularly when combined with this surgery on a small child. It is my opinion that such unfortunate complications as the severing of a vasa or the severing of the vasa during herniorrhaphy can and do occur without any negligence on the part of the surgeon. If in fact Michael's vasa were severed by me during that surgery in 1955, I believe that it happened although I was operating carefully and despite the fact that I then possessed and was exercising the degree of care, skill and judgment which physicians in good standing in my field of general practice usually exercise under those circumstances and having due regard to the state of medical science at that time."

The affidavit of another doctor, submitted on behalf of the plaintiffs, stated that a severing of the vasa during hernia surgery could not have occurred without negligence on the part of the physician. Thus, it is clear that this case if tried would go to the jury on a theory of res ipsa loquitur, with the expert witnesses testifying to half remembered surgical standards of 25 years ago. Beginning with *Fehrman v. Smirl*, 20 Wis.2d 1, 121 N.W. 2d 255 (1963), this court has continuously relaxed the rules of proof in medical malpractice cases. The underlying policy reason is that the cost of negligence can reasonably be insured against where there exists a statute of limitation. Where an insurance policy is in existence, the insurer undertakes to defend its insured. But what of the retired doctor, no longer covered by malpractice insurance? Should he be denied peace of mind because of an event that incurred in the distant past?

How much insurance should a physician carry to protect himself against claims for malpractice which might be made 25 years later? Is there an insurance underwriter who is able to predict the cost of medical malpractice insurance 25 years down the road in view of the present inflationary spiral? At the current rate of inflation, it might take two billion dollars of coverage in 25 years to provide the same protection that one mil-

lion dollars of coverage provides now. Is the estate of a deceased doctor to be liable for a costly malpractice claim 25 years hence? If the estate has been distributed, are the heirs subject to suit? Moreover, if we were to adopt a discovery rule for medical malpractice cases in this state, it is evident that any insurance company which underwrites the complicated, high risk types of surgery must charge high premiums for coverage in the fields of cardiovascular surgery, neurosurgery, ortho- pedic surgery, pediatric surgery and cardiac surgery. Adoption of a discovery rule will also serve to increase, to the consumer, the already high cost of medical care. In view of the fact that the medical profession is being castigated, almost daily, for rising medical costs, would we not be mandating increased insurance costs to the doctor that must in turn be passed on to the patient by adoption of the discovery rule?

How can we expect a young doctor to testify as an ex- pert witness to medical practices and procedures of 25 years earlier when he was not in practice? Surgical techniques have changed rapidly over the years. Will we inhibit innovative surgery undertaken in teaching hospitals, which are in the forefront of medical research, by giving open-ended extension to the statute of limita- tions? Advances such as the transplanting of a heart and kidney in the 1950's and 1960's or the reattachment of a severed hand or arm were unthought of many years ago. Future advances, particularly in teaching hospitals, will be too extraordinary to even predict. What sur- geon will assume the risk of delicate, high risk surgery to save a human life where there exists a discovery rule tolling the statute of limitations period indefinitely? This is especially true where some judgment call during an arduous 8-hour surgical procedure may be the sub- ject of a malpractice lawsuit 25 years hence. It is my belief that the adoption of a discovery rule would inhibit medical research in the years ahead, again to the detri-

ment of the patient who will suffer as a result of the lack of improved medical care and treatment.

Our statutes of limitation relating to personal injuries must be interpreted and applied uniformly. As the per curiam opinion points out, the uniform interpretation of these statutes has been that a cause of action accrues at the time an injury occurs, even though the injured party might not be aware of the injury. In some medical malpractice cases, this will deny some plaintiffs the opportunity to recover for injuries negligently inflicted. In many more, retired doctors no longer with malpractice insurance coverage will be protected from spurious claims. Where to strike the balance is a matter for the legislature, not for this court. The legislature is best suited to deal with this problem through full and open hearings where all interested parties (doctors, lawyers, economists, insurance underwriters, associate medical personnel and consumer representatives) will have the opportunity to present their thoughts and also outline any problems that may exist.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The rule applied by the majority in this case began as a judicial construction of statutory language relating to accrual of the cause of action. I believe the court erred in its interpretation of the statutory language and should now correct the erroneous statutory construction. *State ex rel. Chobot v. Circuit Court,* 61 Wis.2d 354, 366, 212 N.W.2d 690 (1973).

Chief Justice Hallows, in his dissenting opinion in *Peterson v. Roloff,* 57 Wis.2d 1, 7, 203 N.W.2d 699 (1973), wisely urged the court to adopt a more realistic view of what constitutes an injury and to adopt the "discovery rule." I agree with Chief Justice Hallows' observation that this court:

" 'closed our courtroom doors without legislative help, and we can likewise open them.' Our courts should be

alive to the demands of justice. Here, the legislature has not defined accrual of a cause of action and this case calls for the exercise of our judicial duty to interpret the statutory language 'after the cause of action has accrued' so as to offer reasonable protection to the innocent victim of [alleged] medical malpractice." *Peterson v. Roloff, supra,* 57 Wis.2d at 16–17.

The circuit court was correct. I dissent.

I am authorized to state that Justice Roland B. Day joins me in this dissent.