IN the MATTER OF the ESTATE OF Earl W. FESSLER, Deceased:

WILLIAM B. TANNER COMPANY, INC.,
Appellant-Petitioner,

v.

ESTATE OF Earl W. FESSLER, Respondent.

Supreme Court

*No. 79-645. Argued February 2, 1981.—Decided March 3, 1981.*

(Also reported in 302 N.W.2d 414.)

For the petitioner there were briefs (in this court) by *Percy L. Julian, Jr.,* and *Julian & Associates, S.C.,* of Madison; and *Louis R. Lucas, Kathy Gomes* and *Picard, Caywood, Lucas & Watson,* and oral argument by *Louis R. Lucas,* all of Memphis, Tennessee.

For the respondent there was a brief (in this court) by *Thomas R. Glowacki* and *Harris, Hill & Glowacki,* of Madison, and oral argument by *Thomas R. Glowacki.*

There was a brief (in court of appeals) by *Bronson C. La Follette,* attorney general, and *F. Joseph Sensenbrenner, Jr.,* assistant attorney general.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which affirmed the judgment of the Circuit Court for Dane County, ROBERT R. PEKOWSKY, Circuit Judge.

This matter concerns the denial of a claim filed in probate court against the Estate of Earl W. Fessler, deceased. The claim was filed by the William B. Tanner Company, Inc. The claimant is a Tennessee corporation

which engages in the business of providing promotional advertising and other services to various radio and television stations throughout the United States.

The record reflects that the decedent was the owner and operator of radio station WMFM, Madison, Wisconsin. In this capacity he contracted with the William B. Tanner Company, Inc. (Tanner) for a service program known as a "Creative Sales Service." In consideration for this service program, the decedent agreed to pay a monthly sum and agreed to provide a series of "one-minute spots" to be used by Tanner for advertising purposes during the radio station's broadcasting programs. There was no time limitation on the use of these spots and under the contract they remained valid until used. The parties initially contracted for a one-year term in 1968. A second contract was entered into in 1969. This was a two-year contract.

Tanner alleges that $11,287.20 is owed to it under the terms of the contracts. This sum represents both the monthly payments remaining due under the agreements and the value of the unused "one-minute spots" that were to be provided by the decedent to Tanner.

The decedent died on November 27, 1977. A petition for the probate of his will was filed on December 14, 1977. On that same date, pursuant to secs. 859.01 and 859.05, Stats.,[1] the probate court entered an order limit-

---

[1] Sec. 859.01, Stats., provides: "Except as provided in sub. (3) and s. 859.03, all claims against a decedent's estate including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, are forever barred against the estate, the personal representative and the heirs and beneficiaries of the decedent unless filed with the court within the time for filing claims."

Sec. 859.05, Stats., provides: "Upon the filing of an application for administration, the court or the probate registrar under informal administration proceedings shall by order fix the time within which claims against the decedent shall be presented or

ing the time for the filing of claims by creditors. According to the order, claims were to be filed by March 28, 1978. Notice of this limitation was ordered to be published in the Wisconsin State Journal once a week for three consecutive weeks. A notice was in fact published in accord with sec. 859.07.[2]

On December 26, 1978, almost nine months after the final date for filing claims as ordered by the court, Tanner filed a claim against the estate in the amount of $11,287.20. The personal representative, Mrs. Earl W. Fessler, objected to the allowance of Tanner's demand as an untimely claim barred by the operation of sec. 859.01, Stats.

A hearing was held on the claim on February 28, 1979. Tanner argued that before a creditor's rights may be extinguished by operation of sec. 859.01, Stats., notice which is reasonably calculated to advise the creditor of the pending probate proceeding is required by the due process clause of the fourteenth amendment. It was contended that notice by publication alone under the terms of sec. 859.07 was not constitutionally valid. The personal representative argued that the notice scheme was not unconstitutional and that Tanner's claim was barred by the time limitation under the probate code.

Although Tanner's argument challenged the constitutionality of the notice provisions of sec. 859.07, Stats.,

be forever barred. The time shall be 3 months from the date of the order."

[2] Sec. 859.07, Stats., provides in part: "Notice of the time within which creditors may present their claims and of the time when the claims, as set by the court or probate registrar under informal administration proceedings, will be examined and adjusted by the court shall be given by publication, under s. 879.05 (4), and may be given with the notice for granting letters. No date for examination and adjustment need be given in informal administration proceedings. The first insertion shall be made within 15 days of the date of the order setting the time."

no notice was served upon the attorney general to afford the state an opportunity to be heard at the probate proceedings.

The probate court disallowed the claim, and Tanner appealed. While this matter was pending before the court of appeals, the attorney general was notified and was given an opportunity to participate in the appellate proceedings. In response to this invitation the attorney general maintained that the court of appeals had no jurisdiction to hear the appeal in light of Tanner's failure to give the state notice of the lower court proceeding wherein the statutes were originally challenged as unconstitutional. Addressing the merits of Tanner's claim, the attorney general adopted the argument of the personal representative as an ample presentation of the case law and policy considerations in support of the constitutionality of the notice provisions under ch. 859, Stats. The court of appeals dismissed the appeal in light of the lack of the attorney general's participation at the trial court level. The opinion was unpublished.[3] We subsequently granted Tanner's petition for review.

This case presents three issues:

1. Whether the failure to notify the attorney general of the proceedings prior to the time the cause reached the court of appeals requires the dismissal of Tanner's appeal.

2. Whether a creditor is entitled as a matter of due process of law to be notified of an order under sec. 859.05, Stats., limiting the time for the filing of claims.

3. Whether the notice provisions of ch. 859, Stats., unduly "fetter" the flow of interstate commerce so as to be violative of the commerce clause of the federal constitution.

The personal representative asked that we dismiss this review due to Tanner's failure to provide the attorney

---

[3] Order recorded at 95 Wis.2d 740.

general with an opportunity to participate in the initial challenge to the constitutionality of the notice provisions of ch. 859, Stats., in the probate court. It is claimed that this result is required by the rule of *Kurtz v. City of Waukesha*, 91 Wis.2d 103, 280 N.W.2d 757 (1979). However, the *Kurtz Case* was decided several months after judgment was entered against Tanner, and Tanner argues that the retroactive application of the holding in that case to this proceeding would violate the due process clause of the fourteenth amendment.

Although the arguments of counsel have focused upon the retroactivity of the *Kurtz* decision, we conclude that even if it is assumed that that decision has retroactive effect, the *Kurtz* rule does not bar our consideration of the merits of Tanner's claims.

Prior to our decision in *Kurtz v. City of Waukesha, supra*, this court recognized the importance of allowing the attorney general to participate in proceedings wherein a statute was challenged as invalid. In *Kenosha v. Dosemagen*, 54 Wis.2d 269, 195 N.W.2d 462 (1972), the court considered the constitutional validity of several statutes. It was noted that participation by the attorney general in such cases was desirable. "It is the attorney general who should be afforded the opportunity to act in a representative capacity in behalf of the legislature and the people of the state to uphold the constitutionality of a statute of statewide application." *Id.* at 271. The court concluded that it may in the future direct the state to file a brief amicus curiae when the attorney general has not been made a party to the action. *Id.*

The notice requirement in a nondeclaratory action was reviewed and changed several years after the decision in *Kenosha v. Dosemagen, supra*. In *Kurtz v. City of Waukesha*, 91 Wis.2d 103, 280 N.W.2d 757 (1979), this court ruled that it would not consider the constitutional-

ity of the Fair Employment Act, sec. 111.31 et seq. Stats., due to the failure of the parties to notify the attorney general of the constitutional challenge to the statute and to allow him to be heard on the issue. The court wrote:

"We conclude that cogent reasons exist for the application of the service requirement in all cases involving constitutional challenges . . . Because we hold that the service requirement is applicable to this case and the record is devoid of evidence of service on the attorney general, it follows that the trial court could not properly consider the constitutional issue raised by the demurrer. We therefore cannot review that issue." 91 Wis.2d at 117.

Under the *Kurtz* rule a party will be foreclosed from challenging the validity of a statute unless the attorney general is given an opportunity to appear before the court and defend the law as constitutionally proper.

There is no dispute in this case that notice to the attorney general was not given and that the *Kurtz* rule was not complied with. The question which must be resolved is whether notice which was first given in this case while the cause was pending before the court of appeals cured the defect created by the failure to give notice to the attorney general at the probate court level.

Although the *Kurtz* rule is closely akin to the notice of requirement under sec. 806.04(11), Stats.,[4] and although the failure of notice in a sec. 806.04 declaratory action would require dismissal for lack of jurisdiction,

---

[4] Sec. 806.04(11), Stats., provides in part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party, and shall be entitled to be heard. If a statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard."

we conclude the same result is not required in this case. In a declaratory action the failure to give the notice required by sec. 806.04(11) is fatal to the jurisdiction of the court. *O'Connell v. Board of Education, Joint Dist. No. 10*, 82 Wis.2d 728, 735, 264 N.W.2d 561 (1978); *Town of Center v. City of Appleton*, 70 Wis.2d 666, 669, 235 N.W.2d 504 (1975); *Bollhoffer v. Wolke*, 66 Wis.2d 141, 144, 223 N.W.2d 902 (1974). This conclusion is mandated by the language in sec. 806.04(11). *See Bollhoffer v. Wolke, supra* at 143. Because the declaratory action itself is a creature of statute, the maintenance of a declaratory action requires strict compliance with sec. 806.04. *O'Connell v. Board of Education, Joint Dist. No. 10, supra* at 735. Unlike the notice requirement under the statutes, the *Kurtz* rule is a judicially mandated rule of procedure. Lack of compliance with this rule will not preclude review of a constitutional issue because of a failure of jurisdiction.

The purpose of the *Kurtz* rule is to allow the state to defend the validity of its statutes. *Kenosha v. Dosemagen, supra*, 54 Wis.2d at 271. It is intended to afford the court an opportunity to analyze questions of constitutional dimension from a perspective that is not limited to the narrow interests and views of the private parties to the action. In this case we conclude that the failure to notify the attorney general of the probate court proceedings was a defect which was cured by virtue of the subsequent invitation to the attorney general to participate in the court of appeals' proceedings. In light of the opportunity which was given to the attorney general, and in the absence of any claim or evidence that the interests of the state have been prejudiced by its lack of participation in the probate proceedings, the purpose of the *Kurtz* rule has been fulfilled. There is no reason for refusing to consider Tanner's claims on their merits.

■

Tanner's principal argument on this review is that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires more than notice by publication under sec. 859.07, Stats., to apprise creditors of the opportunity to present proof of their claims and to inform them of the fact that claims will be barred if not timely submitted. In support of this argument, principal reliance is placed upon the United States Supreme Court decision in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950). Tanner also notes that the *Mullane* rule has been applied by this court in the context of proceedings to admit a will to probate. *See In re Estate of Phillips*, 92 Wis.2d 354, 284 N.W.2d 908 (1979). It is therefore argued that the *Mullane* rule applies in similar fashion to the notice which is given to creditors under sec. 859.07.

We do not agree with Tanner's view of the notice requirements due to a creditor under ch. 859, Stats. As set forth below, we conclude that the *Mullane* rule does not control the disposition of this case. As a matter of due process of law, notice of the operation of sec. 859.01 is not required.

In the case of *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950), the court considered the validity of a New York state court judgment which finalized the accounts of the trustees of a common trust fund established under the laws of New York. This judgment foreclosed every right which the beneficiaries would have had against the trustee of the common fund. The beneficiaries were numerous, and many were not residents of New York. Notice of the proceeding to finalize the fiduciary accounts was given by publication as required by state law. Although the names and addresses of many of the beneficiaries were known, no attempt was made to notify these individuals by personal ser-

vice or by mail. The United States Supreme Court held that the state court judgment was not binding on the beneficiaries whose addresses were known to the trustee of the common trust fund. As to these individuals, the judgment was obtained in violation of the due process law. The court wrote:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer,* 311 U.S. 457; *Grannis v. Ordean,* 234 U.S. 385; *Priest v. Las Vegas,* 232 U.S. 604; *Roller v. Holly,* 176 U.S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra,* and *cf. Goodrich v. Ferris,* 214 U.S. 71." *Id.* at 314.

The court viewed the publication notice as a hollow formality and concluded that "when notice is a person's due, process which is a mere gesture is not due process." *Id.* at 315.

In the thirty years since it was decided, *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306 (1950), has been the controlling precedent in a number of United States Supreme Court cases. In *Schroeder v. City of New York,* 371 U.S. 208 (1962), the court held that a condemnation proceeding which was predicated upon notice by publication was violative of due process.[5] A similar conclusion was reached in *Covey v. Town of Somers,* 351 U.S. 141 (1956). In that case the court concluded that a proceeding to enforce a tax lien which resulted in a judgment of foreclosure was not binding upon a legally incompetent person who was without a guardian and who had been notified of the action by

[5] *See also Walker v. Hutchinson City,* 352 U.S. 112 (1956).

mail. The United States Supreme Court has also held that a court decree terminating the parental rights of a natural parent and establishing those rights in an adoptive parent was violative of due process in that the termination/adoption proceeding was not preceded by actual or constructive notice to the natural parent. *See Armstrong v. Manzo,* 380 U.S. 545 (1965). Most recently, in *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978), the court ruled that a termination notice sent out by a municipal utility does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified. In that case the *Mullane* rule was held to require notice of that which the court viewed as an informal due process hearing. *See Id.* at n. 17.

These cases make it clear that when the rights or interests of a person are sought to be affected by judicial or quasi-judicial decree, due process requires that the individual be given notice reasonably calculated to inform the person of the pending proceeding and to afford him or her an opportunity to object and defend his or her rights. This is the essence of the rule of *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306 (1950), and its progeny. It is evident upon a reading of these cases that the scope of the *Mullane* rule is limited to those rights or interests jeopardized by judicial or quasi-judicial actions or proceedings. It is therefore crucial to this review to determine whether or not Tanner's claim has been extinguished by adjudication or by some other means.

Tanner's claim was extinguished by operation of sec. 859.01, Stats.[6] This section requires that claims in probate be filed within a specified period of time, and if a

---

[6] *See* footnote 1.

claim is not filed it is barred forever. It is settled law in Wisconsin that this statute is essentially a statute of limitations. *Estate of Palmer,* 68 Wis.2d 101, 107, 227 N.W.2d 680 (1975); *Estate of Lathers,* 215 Wis. 151, 251 N.W. 466 (1934).

The bar created by operation of a statute of limitations is established independently of any adjudicatory process. It is legislative expression of policy that prohibits litigants from raising claims—whether or not they are meritorious—after the expiration of a given period of time. *See Gamma Tau Educational Foundation v. Ohio Cas. Ins. Co.,* 41 Wis.2d 675, 683, 165 N.W.2d 135 (1969). *See also Denzer v. Rouse,* 48 Wis.2d 528, 534, 180 N.W.2d 521 (1970). Under Wisconsin law the expiration of the limitations period extinguishes the cause of action of the potential plaintiff and it also creates a right enjoyed by the would-be defendant to insist on that statutory bar. *See Pulchinski v. Strnad,* 88 Wis. 2d 423, 276 N.W.2d 781 (1979). The passage of time itself destroys the right and remedy of the injured party.

We conclude that Tanner's probate claim was cut off by operation of a statute of limitation and not by action of a judicial body. Therefore, the *Mullane* rule has no application. Of course this is not true of all aspects of the probate process. As we recognized in *In re Estate of Phillips,* 92 Wis.2d 354, 284 N.W.2d 908 (1979), the *Mullane* rule operates where the powers of the court are invoked to pass judgment on the validity of a will. However, *Mullane* does not require that a person be notified of the running of a statute of limitations.

This is not to say that the due process clause has no application to a discussion of the operation of a limitations statute. Once a cause of action accrues it may not be divested except by operation of the due process of law. *Hunter v. School District of Gale-Ettrick-Trempealeau,* 97 Wis.2d 435, 443, 293 N.W.2d 515 (1980).

However, the focus of our attention must now shift to a consideration of whether the legislature may, consistent with notions of due process, divest a person of his cause of action even though he may not precisely know the time within which he must assert his claim to preserve it.

In the case of *Rod v. Farrell,* 96 Wis.2d 349, 291 N.W. 2d 568 (1980), this court rejected the "discovery rule" as it related to the accrual of a cause of action in a medical malpractice case. The court adhered to its previous rulings which held that the statute of limitations for a medical malpractice claim begins to run at the time the negligent act occurs with accompanying injury. *Id.* at 352. In *Rod v. Farrell,* it was alleged that the defendant negligently performed surgery on the plaintiff in 1951 thereby causing the plaintiff to become sterile. This sterility was not discovered until 1975. Suit was filed in 1976. Despite the fact that the statutory limit to the plaintiff's action had expired years before his injury was even discovered, we concluded that the operation of the limitation statute did not offend the due process clause of the federal constitution. *Id.* at 356.

In this case Tanner knew of the existence of its claim and failed to assert it within the limits imposed by sec. 859.01, Stats., only because of a failure to keep in close enough contact with the decedent to know that he had died. Having concluded that the operation of the statute of limitations in the *Rod v. Farrell Case* was not violative of due process, it would be inconsistent to find such a constitutional violation under the facts and circumstances of this case.

The conclusion which we have reached in this case is in accord with the determinations of courts from other jurisdictions. In the case of *Gano Farms, Inc. v. Estate of Kleweno,* 2 Kan. App. 506, 582 P.2d 742 (1978), the Kansas Court of Appeals considered the validity of

the operation of a probate code statute requiring only notice by publication as a means of notifying creditors of their time to file claims. The court ruled that the creditor's claim was barred by the nonclaim statute and not by virtue of being made a party to a judicial proceeding requiring *Mullane*-type notice. *Id.* at 508. Other courts have reached similar conclusions in similar cases.[7] One such case was *Baker National Bank v. Henderson,* 151 Mont. 526, 445 P.2d 574 (1968). Since the Montana Supreme Court ruled against the creditor on due process grounds in that controversy, an appeal was taken to the United States Supreme Court. The appeal was dismissed for want of a substantial federal question. *Baker National Bank v. Henderson,* 393 U.S. 530 (1969). As compared to the denial of a writ of certiorari, the dismissal of an appeal is an adjudication on the merits of the controversy. *Hicks v. Miranda,* 422 U.S. 332 (1975). Although entitled to less precedential weight than would be accorded a decision accompanied by a full opinion,[8] the dismissal of the appeal by the United States Supreme Court is authority which supports our conclusion that no due process violation has occurred in this case.

Tanner's final argument is that it is a violation of the commerce clause to allow an out-of-state creditor's claim to be extinguished by virtue of the operation of sec. 859.01, Stats., without notice to the creditor which is reasonably calculated to inform the potential claimant of the operation of a nonclaim statute. The thrust of this ar-

[7] *See Brunell Leasing Corporation v. Wilkins,* 11 Ariz. App. 165, 462 P.2d 858 (1969); *Baker National Bank v. Henderson,* 151 Mont. 526, 445 P.2d 574 (1968); *Continental Coffee Co. v. Est. of Clark,* 84 Nev. 208, 438 P.2d 818 (1968); *New York Merch. Co. v. Stout,* 43 Wash.2d 825, 264 P.2d 863 (1953).

[8] *See* Tribe, *American Constitutional Law,* secs. 3–5, n. 8 (1978).

gument is that notice by publication alone is no notice at all to out-of-state creditors and this unduly fetters interstate trade or commerce. Tanner argues that the United States Supreme Court decisions in *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20 (1974), and *Shafer v. Farmers Grain Co.,* 268 U.S. 189 (1925), require us to rule in its favor. This claim is without merit. The cases cited to us involve the question of a state's authority to regulate intrastate activities which are part and parcel of the flow of interstate commerce. Based on the record in this case, we know only that a nonresident creditor entered into two contracts with a resident radio station owner, and claims for a breach of these agreements were extinguished by operation of a probate statute. We are at a loss to understand how this record establishes a violation of the commerce clause. A state does not lose its authority to regulate matters of contract and probate law simply because the disputed transaction involves a nonresident. To the extent that it is argued that lack of sufficient notice "fetters" interstate commerce, we view this claim as a due process argument clothed in the guise of an alternative constitutional provision.

The denial of Tanner's claim violated no provision of the federal constitution. The rule of the *Mullane* decision does not limit the authority of the legislature to extinguish a claim by virtue of the operation of a limitations statute. Tanner was divested of his claim in a manner not offensive to notions of due process. Finally, the state is not deprived of authority to regulate the administration of the estate merely because the decedent's creditors were not Wisconsin residents. No violation of the commerce clause was involved in this case.

*By the Court.*—The decision of the Court of Appeals is modified and, as modified, affirmed.