IN the MATTER OF the ESTATE OF: Regina BARTHEL, Deceased. SEARS, ROEBUCK & COMPANY, Appellant,

v.

Marge PLATH, Personal Representative, Respondent.

Supreme Court

*No. 89-1905. Submitted on briefs March 27, 1991.—Decided May 9, 1991.*

(Also reported in 468 N.W.2d 689.)

For the appellant there was a brief (in the court of appeals) by *Ronald L. Diersen,* Kenosha.

For the respondent there were no briefs filed, however, there was correspondence (in the court of appeals) by *Marge Plath,* Mundelein, Illinois.

CALLOW, WILLIAM G., J. This case is before this court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. The appellant Sears, Roebuck & Company (Sears) appeals from an order denying its claim for $6,522.73 against the estate of Regina Barthel. The circuit court for Kenosha county, Judge Jerold W. Breitenbach, denied Sears' claim on the ground that it was not timely filed, and hence was barred

by sec. 859.01(1), Stats. 1987–88.[1]

One issue is raised on appeal: Do secs. 859.01 and .07,[2] Stats. 1987–88, violate a creditor's right to due process of the law under the Fourteenth Amendment to the United States Constitution, because they provide for notice of time limits in which to file claims against a decedent's estate only by publication, and bar claims not filed within the time limitation? We conclude that these "nonclaim" statutes violated Sears' due process rights under the fourteenth amendment because Sears was a known or reasonably ascertainable creditor, and was entitled to actual notice.[3]

---

[1]Section 859.01(1), Stats. 1987–88, provides:

**Limitation on filing claims against decedent's estates.** **(1)** Except as provided in sub. (3) and s. 859.03, all claims against a decedent's estate including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, are forever barred against the estate, the personal representative and the heirs and beneficiaries of the decedent unless filed with the court within the time for filing claims.

[2]Section 859.07, Stats. 1987–88, provides, in part:

**Notice; publication.** Notice of the time within which creditors may present their claims and of the time when the claims, as set by the court or probate registrar under informal administration proceedings, will be examined and adjusted by the court shall be given by publication, under s. 879.05(4), and may be given with the notice for granting letters . . .. The first insertion shall be made within 15 days of the date of the order setting the time.

Section 879.05(4), Stats. 1987–88, provides:

SERVICE BY PUBLICATION. Unless a statute provides otherwise, every court notice required to be given by publication shall be published as a class 3 notice in a newspaper published in the county, eligible under ch. 985, as the court by order directs.

[3]"Actual notice" as we use the expression in this decision, refers to "[n]otice by mail or other means as certain to ensure actual notice." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800 (1983).

590

The relevant facts follow. Regina Barthel died on August 4, 1988. On September 13, 1988, the probate registrar for the Kenosha county circuit court issued an order after Barthel's estate filed an "Application for Informal Administration." Pursuant to secs. 859.01 and .05, Stats. 1987–88, this order dictated that all creditors' claims against the estate would be barred if not filed by December 13, 1988. Additionally, the probate registrar ordered notice to be published for three consecutive weeks, pursuant to secs. 859.07 and 879.05(4). Notice was published for three consecutive weeks from September 16, 1988 through September 30, 1988 in the Kenosha News, advising creditors of the time limitations for filing claims against Barthel's estate.

The appellant (Sears) was unaware of Barthel's death until December 12, 1988. Sears alleged that it was informed on December 21, 1988 that Barthel had left no estate. On January 13, 1989, Barthel's daughter advised Sears that the time limit for filing claims against the estate had expired.

Sears filed a claim for $6,522.73 against the estate on February 20, 1989.[4] On February 24, 1989, Sears filed a "Motion to Determine Allowability of Claim" with the circuit court. Hearings were held before the circuit court on March 29, 1989 and May 3, 1989.

The state attorney general was given an opportunity to participate in the May 3, 1989 hearing, but declined to participate. At the May 3, 1989 hearing, Sears challenged the statutory notice procedure on the ground that publication notice did not satisfy the procedural due process protections of the fourteenth amendment. Sears based its argument on the United States Supreme Court

[4]Sears originally filed this claim on January 20, 1989, but the claim was rejected by the Kenosha county circuit court as untimely filed.

case, *Tulsa Professional Collection Servs. v. Estate of Pope,* 485 U.S. 478 (1988).

The circuit court refused to allow Sears' claim, on the ground that it was not filed before the time limit expired. The court recognized the inconsistency between *Pope* and this court's decision in *In re Fessler,* 100 Wis. 2d 437, 302 N.W.2d 414 (1981), but felt compelled by *Fessler* and the language of secs. 859.01 and .07, Stats. 1987–88, to deny the claim.[5] Sears appealed this decision and the court of appeals certified the case to this court for review and determination, pursuant to sec. (Rule) 809.61, Stats. We review this issue without deference to the decision of the circuit court, as it involves the issue of constitutionality. *State v. Holmes,* 106 Wis. 2d 31, 41 n.7, 315 N.W.2d 703 (1982).

We conclude that secs. 859.01 and .07, Stats. 1987–88, violate Sears' right to due process of the law for three reasons. First, the statutes in this case operate similarly to the Oklahoma statutes which the Supreme Court in *Pope* found may adversely affect a creditor's protected property interest. *Pope,* 485 U.S. at 488. Second, the rationale which led to our conclusion in *Fessler* is no longer sound. Finally, while the statutory change does not control our decision today, it is significant that the state legislature subsequently amended ch. 859, Stats., in response to the Supreme Court's decision in *Pope.*

---

[5]We note that the circuit court, relying on *Fessler,* upheld the constitutionality of these sections notwithstanding the Supreme Court's later holding in *Pope.* In *Just v. Marinette County,* however, we held that trial courts were competent to decide the constitutionality of a statute. *Just,* 56 Wis. 2d 7, 26, 201 N.W.2d 761 (1972).

First, the United States Supreme Court addressed an Oklahoma statutory probate process in *Pope* which was similar to the probate process followed in this case. In *Pope,* after Pope died testate, his widow initiated probate proceedings in accordance with Oklahoma's probate code. Okla. Stat. Tit. 58 (1981). This chapter provides that an interested party may initiate probate proceedings by petitioning the court to have the will proved. *Id.* at sec. 22. After setting a hearing date, sec. 25, and notifying "all heirs, legatees and devisees of the testator," secs. 25 and 26, the court may admit the will to probate pursuant to sec. 30. Thereafter, the court must qualify and appoint an executor/executrix, sec. 101, who is required to give notice to the creditors of the deceased. Section 331.* The statute only required that notice be published in a county newspaper once a week for two consecutive weeks. *Id.* If a creditor did not file a claim within two months of the date of first publication, the creditor's claim was barred. Section 332.* The Supreme Court, applying the principles of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), and *Mennonite,* 462 U.S. 791, determined that if a creditor was known or "reasonably ascertainable,"[6] the due pro-

---

*These sections were amended after *Pope* pursuant to 1988 Okla. Laws sec. 21, ch. 228.

[6]Neither *Pope* nor *Mennonite* requires actual notice to creditors who are not "known or reasonably ascertainable." *See Pope,* 485 U.S. at 491; *Mennonite,* 462 U.S. at 800. In *Pope,* the Court remanded the case for a determination whether the creditor was known or reasonably ascertainable. *Id.* Here, by contrast, the record reflects that the respondent was aware that Sears was a creditor of Barthel on the day that probate proceedings were commenced. Hence, Sears was clearly a "known or reasonably ascertainable" creditor.

cess clause of the fourteenth amendment required "[n]otice by mail or other means as certain to ensure actual notice." *Pope,* 485 U.S. at 491 (quoting *Mennonite,* 462 U.S. at 800). Those same principles lead to the same conclusion in this case.

The *Pope* Court quoted *Mennonite* for the proposition that "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable." *Pope,* 485 U.S. at 485 (quoting *Mennonite,* 462 U.S. at 800) (emphasis in original). The Supreme Court then applied this proposition in four stages: (1) Did a protected property interest exist?; (2) Did the proceeding involve state action?; (3) Did the proceeding adversely affect this protected property interest?; and (4) What effect would actual notice have on important state interests? *See Mullane,* 339 U.S. at 313–14.

The Court first held that the creditor's unsecured claim against the decedent's estate represented a property interest protected by the fourteenth amendment. *Pope,* 485 U.S. at 485. The Court relied on its decision in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982), that a cause of action was a protected property interest. *Id.* Similarly, Sears' claim against Barthel's estate also represents a protected property interest.

The *Pope* Court next concluded that the Oklahoma statutes involved state action. *Id.* at 487. Unlike self-executing statutes of limitation, which do not involve sufficient state activity to implicate the due process clause, the Oklahoma statutes required actions by the state court to trigger the application of the statutes. *Pope,* 485 U.S. at 486–87. Here, also, the statutes were

not self-executing statutes of limitation. Before the time limitation provision was triggered in this case, the representative of the estate filed an "Application for Informal Administration" with the probate registrar of the circuit court, pursuant to sec. 865.06, Stats. 1987-88. The probate registrar is either the circuit court itself or a designate of the court. Before the time limit begins to run, the court or the registrar must fix a time limit for claims against the decedent, and orders publication of that time limit. Sections 859.05, .07, and 879.05(4), Stats. 1987-88. As in *Pope,* these statutes require significant state involvement in triggering the operation of the time limitation and the notice proceedings.

Additionally, as in *Pope,* this action "adversely affected a protected property interest." *Pope,* 485 U.S. at 488. As the Supreme Court stated:

> The entire purpose and effect of the nonclaim statute is to regulate the timeliness of such claims and to forever bar untimely claims, and by virtue of the statute, the probate proceedings themselves have completely extinguished appellant's claim. Thus, it is irrelevant that the notice seeks only to advise creditors that they may become parties rather than that they are parties, for if they do not participate in the probate proceedings, the nonclaim statute terminates their property interests.

*Id.* Here, as in *Pope,* the statutes in question effectively extinguish Sears' protected property interest.

Finally, the State undeniably has a legitimate interest in the "expeditious resolution of probate proceedings" as did the state of Oklahoma in *Pope. Id.* at 489. However, as the Court stated: "Providing actual notice to known or reasonably ascertainable creditors, however,

is not inconsistent with the goals reflected in the non-claim statutes." *Id.* On balance, providing actual notice to known or reasonably ascertainable creditors "is not so cumbersome as to unduly hinder the dispatch with which probate proceedings are conducted." *Id.* at 490. As the Supreme Court reasoned in *Pope,* we find that although providing actual notice to Sears could lead to some delay in the resolution of the probate proceeding, this delay is not sufficient to deny Sears the right to due process of law.

The second reason for our holding today is that the reasoning behind this court's holding in *Fessler* that secs. 859.01 and .07, Stats. 1977,[7] did not violate due process is no longer valid. *Fessler* involved a case where a creditor filed a claim against Fessler's estate almost nine months after the final date for filing claims ordered by the probate court under sec. 859.05, Stats. (1977). *Fessler,* 100 Wis. 2d at 440. The creditor appealed the probate court's disallowance of the claim, contending that notice by publication alone under sec. 859.07 violated its due process rights.

We concluded that *Mullane* did not control the outcome of that case. *Id.* at 445. We held that no due process violation had occurred in *Fessler. Id.* at 450. We reached this holding in part based on our conclusion that the creditor's claim was cut off by the operation of the statute of limitations, and not by the actions of a judicial body. *Id.* at 448.[8] Significant to this determination was

---

[7]The applicable language in these sections remained unchanged from the 1977 statutes through the 1987–88 statutes.

[8]In light of the reasoning behind the *Pope* decision and its subsequent application to this case, we now conclude that sec. 859.01, Stats. 1987–88, does not represent a self-executing statute of limitations, but involve sufficient state action to invoke the due process clause.

our consideration of *Rod v. Farrell,* 96 Wis. 2d 349, 291 N.W.2d 568 (1980). In *Rod,* we rejected the "discovery rule" as it related to a cause of action in a medical malpractice case. *Rod,* 96 Wis. 2d at 352-57. Farrell discovered his injury years after the statute of limitations to his action had expired. Nonetheless, we concluded that the operation of the statute of limitations did not offend the due process clause of the federal constitution. *Id.* at 356. We stated in *Fessler:* "Having concluded that the operation of the statute of limitations in the *Rod v. Farrell* case was not violative of due process, it would be inconsistent to find such a constitutional violation under the facts and circumstances of this case." *Fessler,* 100 Wis. 2d at 449.

We subsequently reconsidered the discovery rule in *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983). In *Hansen,* a personal injury case, we cited *Rod* for the conclusion that using the date of injury as a benchmark for the accrual of a claim could lead to a harsh result. *Hansen,* 113 Wis. 2d at 556. We found that the public policy of allowing meritorious claims outweighed the threat of stale or fraudulent actions, and adopted the discovery rule for all tort actions not covered by a legislatively created discovery rule. *Id.* at 558-60.

As a result of our decision in *Hansen,* adopting the discovery rule, *Rod* no longer supports our conclusion in *Fessler.* As in *Hansen,* the public policy of allowing Sears (a known creditor) to bring a meritorious claim, outweighs the threat of stale or fraudulent actions. Sears did not discover its claim until one day before the time limit for filing claims had expired, and was diligent in attempting to file a claim thereafter. The threat of a stale action is minimal in this case. In light of *Pope* and

*Hansen,* we conclude that secs. 859.01 and .07, Stats. 1987–88, violate due process of law, as they do not provide actual notice to creditors who are known or reasonably ascertainable.

The final reason for our decision today is based on the fact that ch. 859, Stats., has since been amended by the legislature, reflecting its implementation of the *Pope* decision. *See* 1989 Wis. Act 96, sec. 8 Note.[9] This legislation was enacted to prevent claims such as this from being barred. *Id.* Section 859.02(2)(b)1 now provides that if the personal representative "knew, or in an exercise of reasonable diligence should have known, of the existence of the potential claim and of the identity and mailing address of the potential claimant," and the creditor was not aware of the estate proceeding pursuant to sec. 859.02(2)(b)2 and 3, that claim is not barred by sec. 859.01.[10]

---

[9]1989 Wis. Act 96, sec. 8 Note provides, in part:

NOTE: . . .. Subsection (2)(b) implements *Tulsa Professional Collection Services v. Pope,* 485 U.S. [478] (1988). It removes from the bar of the nonclaim statute claims of creditors known to the personal representative, or discoverable by reasonable diligence, unless notice of the time for presenting claims is given to such creditors, or unless they have actual timely notice of the pendency of the proceeding and thus are not prejudiced by not being given such notice. Subsection (2)(b) . . . merely provides that some claims are not barred in certain circumstances.

[10]The respondent argues that she should have the benefit of the law in effect at the time the estate was probated, because she complied with its terms. However, since the nonclaim statutes, as applied, violate the due process rights of Sears, their operation is void and cannot be relied upon to bar Sears' claim against the estate. *See State ex rel. Comm'ners of Pub. Lands v. Anderson,* 56 Wis. 2d 666, 672, 203 N.W.2d 84 (1973).

While the fact that the legislature amended ch. 859, Stats. 1987–88, is not by itself determinative of this issue, the fact that this was done in response to the *Pope* decision is significant. The legislature amended ch. 859 because the legislature concluded that it did not provide the due process to which known or reasonably ascertainable creditors such as Sears were entitled. We likewise conclude that Sears, as a known creditor, was entitled to actual notice under the due process clause of the fourteenth amendment. Since Sears did not receive actual notice of the estate proceedings, their claim against the Barthel estate is not barred by secs. 859.01 and .07, Stats. 1987–88.[11]

*By the Court.*—The order of the circuit court is reversed.

---

[11]Subsequent to the *Pope* decision, the legislature enacted sec. 857.31, Stats., which provides that the personal representative of an estate is immune from liability for not giving notice to a known claimant or to a claimant who should have been known through the exercise of reasonable diligence. Section 857.31(2). Section 865.17, Stats., however, allows Sears to pursue a cause of action against the distributees of an estate up to the value of their distribution, pursuant to sec. 865.19.