In the interest of P.L.L.-R:
S.R. and C.L., Joint-Petitioners-Appellants,

v.

CIRCUIT COURT FOR WINNEBAGO COUNTY,
Honorable Karen Seifert, presiding,
Respondent-Respondent.

Court of Appeals

*No. 2015AP219–AC. Submitted on briefs September 9,
2015.—Decided November 4, 2015.*

2015 WI App 98

(Also reported in 876 N.W.2d 147.)

On behalf of the joint-petitioners-appellants, the cause was submitted on the briefs of *Emily Dudak Taylor* of *The Law Center for Children & Families*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *Brad D. Schimel*, attorney general.

A nonparty brief was filed by *Tamara B. Packard* of *Cullen Weston Pines & Bach LLP*, Madison, for National Center for Lesbian Rights, Lambda Legal De-

fense and Education Fund, the American Civil Liberties Union, and the ACLU of Wisconsin.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J.[1]  S.R. and C.L. appeal from a circuit court order denying their "Joint Petition for Determination of Parentage." For the following reasons, we affirm.

## Background

¶ 2.  On November 25, 2014, S.R. and C.L. filed "Case No. 2014 AD 77," an adoption action which they titled "Joint Petition For Determination Of Parentage." In their petition, they make the following material assertions.

¶ 3.  On September 4, 2013, S.R. was artificially inseminated utilizing anonymous donor sperm. On June 7, 2014, she gave birth to P.L.L.-R. Six days later, S.R. and C.L., who are both women, were married in Wisconsin.

¶ 4.  In their petition, S.R. and C.L. contend Wis. Stat. §§ 891.41[2] and 891.40,[3] respectively addressing the "[p]resumption of paternity based on marriage of

---

[1] This appeal was advanced for decision under Wis. Stat. Rule 809.20 (2013–14). All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] Wisconsin Stat. § 891.41 **Presumption of paternity based on marriage of the parties** provides:

(1) A man is presumed to be the natural father of a child if any of the following applies:

(a) He and the child's natural mother are or have been married to each other and the child is conceived or born after marriage and before the granting of a decree of legal separation, annulment or divorce between the parties.

136

the parties" and "[a]rtificial insemination," should be "ungendered" based upon Wis. Stat. § 990.001(2),[4] and in accordance with an ungendered reading of those

(b) He and the child's natural mother were married to each other after the child was born but he and the child's natural mother had a relationship with one another during the period of time within which the child was conceived and no other man has been adjudicated to be the father or presumed to be the father of the child under par. (a).

(2) In a legal action or proceeding, a presumption under sub. (1) is rebutted by results of a genetic test, as defined in [Wis. Stat. §] 767.001(1m), that show that a man other than the man presumed to be the father under sub. (1) is not excluded as the father of the child and that the statistical probability of the man's parentage is 99.0% or higher, even if the man presumed to be the father under sub. (1) is unavailable to submit to genetic tests, as defined in [§] 767.001(1m).

[3] Wisconsin Stat. § 891.40 **Artificial insemination** provides:

(1) If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband of the mother at the time of the conception of the child shall be the natural father of a child conceived . . . .

(2) The donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is not the natural father of a child conceived, bears no liability for the support of the child and has no parental rights with regard to the child.

[4] Wisconsin Stat. § 990.001 provides:

**Construction of law; rules for.** In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:

. . . .

(2) Gender. Words importing one gender extend and may be applied to any gender. Any person who by statute, rule or ordinance is designated a chairman, alderman or other similar

statutes, C.L. should be presumed and declared to be the second legal parent of P.L.L.-R. S.R. and C.L. base their argument upon *Wolf v. Walker,* 986 F. Supp. 2d 982 (W.D. Wis. 2014), *aff'd sub nom. Baskin v. Bogan,* 766 F.3d 648 (7th Cir. 2014), *cert. denied,* 574 U.S. ___, 135 S. Ct. 316 (2014), wherein the federal district court held that Wisconsin's laws restricting marriage to only a union between a man and a woman violated the Due Process and Equal Protection clauses of the Four-teenth Amendment. *Wolf,* 986 F. Supp. 2d at 1006, 1016. They further contend C.L. should be declared P.L.L.-R's second legal parent pursuant to "the in-tended parentage doctrine."[5] In their petition, S.R. and C.L. request an order (1) declaring C.L. to be a legal

---

title may use another equivalent title such as, in the case of a chairman, "chair", "chairperson", "chairwoman" or other such appropriate title.

[5] S.R. and C.L. explain the "intended parentage doctrine" in their petition as follows:

The intended parentage doctrine underlies all of Wisconsin's ART [assisted reproductive technology] statutes—Wis. Stat. §§ 69.14(1)(g) and (h) and 891.40—and the recent surrogacy case . . . *Rosecky v. Schissel (In re Paternity of F.T.R.),* 2013 WI 66, 349 Wis. 2d 84, 833 N.W.2d 634. The doctrine has been best defined by the California Supreme Court in *Johnson v. Calvert,* 851 P.2d 776 (Cal. 1993), *cert. denied,* 510 U.S. 874 (1993), *cert. dismissed,* 510 U.S. 938 (1993). In that case, the Court identified a gender-neutral, intention-based standard for establishing the parentage of children conceived through ART. The Court based its ruling on the conclusion that those who make use of ART to bring a child into the world are the "prime movers" of the child's conception and birth and should be assigned the rights and responsibilities that go along with that action. *Id.* at 783. The Court reasoned that, in such circumstances, the intended par-ents' "mental concept of the child" is a "but for" condition of birth, and as such, legitimately gives rise to "expectations in society for adequate performance on the part of the initiators as parents of the child." *Id.*

parent of P.L.L.-R; (2) declaring C.L. and S.R. to be equal legal parents of P.L.L.-R; (3) declaring that the anonymous sperm donor is not a legal parent of P.L.L.-R; (4) directing the Wisconsin Department of Health Services, Vital Records Office, to identify C.L. and S.R. as P.L.L.-R.'s legal parents and issue a birth certificate for P.L.L.-R listing both C.L. and S.R. as parents; and (5) declaring other relief that may be appropriate.

¶ 5. The circuit court held a hearing on the petition in which only the petitioners and their counsel appeared. The court determined it could not grant S.R. and C.L.'s petition because they filed an adoption action yet were not seeking an adoption. The court offered to let the filed action proceed as an adoption, and suggested that should petitioners want to continue pursuing the relief they were seeking in their petition, they alternatively could "file a different action either under paternity or under a civil action for declaratory judgment." The court noted: "The relief that you've requested in your petition are all basically asking for a declaratory judgment." Counsel for petitioners agreed they were not seeking an adoption and that the action they filed was "closer to a declaratory judgment than a request for relief." Counsel further stated: "It's as inappropriately an adoption as a PA [presumably paternity action] or an FA [presumably family action]," adding that they chose "the one without a filing fee." Counsel requested an opportunity to make a record, which the court concluded was inappropriate but permitted nonetheless. After taking testimony from S.R. and C.L., counsel moved the court to reconsider its ruling denying the petition, arguing that "after *Wolf*" the court must "use the [Wis. Stat. ch.] 990 rule of construction to ungender the words as necessary to

implement marriage equality . . . in order to not violate the ruling in *Wolf* [and] the various equal protection and substantive due process rights of not only the parents but the child."

¶ 6. The circuit court reaffirmed its decision denying the petition, stating:

> [U]nder the petition that you filed I don't believe that I can grant the relief you're requesting under the law as it is today. I believe that you have an opportunity to bring an action for declaratory judgment . . ., that if you gave notice to the Attorney General's Office, you have the opportunity to pursue the arguments that you're making here today and I believe they are essentially that the—constitutionally the law is unfair to the parties.

Petitioners made further argument and again sought reconsideration, which the court again denied, concluding, "I don't believe that under an adoption I can make the declaratory rulings that you're asking for." S.R. and C.L. subsequently filed a written motion for reconsideration which the court denied. S.R. and C.L. appeal.

### Discussion

¶ 7. S.R. and C.L. argue the circuit court erred when it refused to grant them the declarations they sought in their petition because "*Wolf v. Walker* controls this case," and therefore WIS. STAT. §§ 891.40 and 891.41 must be applied as "ungendered" and C.L. declared to be the parent of P.L.L.-R. The State responds that the circuit court's decision should be affirmed because this matter was not appropriately filed as an adoption action and "[b]y refusing to pursue their action under the alternative means recom-

mended by the court, [S.R. and C.L.] were attempting to circumvent" both the required filing fee and the requirement that the attorney general be notified in declaratory judgment actions where the constitutionality of a statute is challenged.

■

¶ 8.   As explained below, though S.R. and C.L. filed this matter as an adoption action, they actually are seeking declaratory relief and include in their petition a direct challenge to the constitutionality of WIS. STAT. §§ 891.40 and 891.41 as written. As a result, WIS. STAT. § 806.04, Wisconsin's declaratory judgments act, required S.R. and C.L. to serve the attorney general "with a copy of the proceeding" as the State was entitled to be heard on the matter before the circuit court. *See* § 806.04(11) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration . . . . If a statute . . . is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.").[6] Here, it is undisputed the attorney general was not served or afforded an opportunity to be heard before the circuit court.

---

[6] WISCONSIN STAT. § 806.04 further provides:

(2) . . . Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder . . . .

. . . .

(12) . . . This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations . . . .

■ 9.   Ultimately, we view the question before us as a question of whether the circuit court had competency to adjudicate S.R. and C.L.'s action in light of their failure to serve the attorney general. *See State v. Starks*, 2013 WI 69, ¶ 36, 349 Wis. 2d 274, 833 N.W.2d 146, *cert. denied*, 135 S. Ct. 1548 (2015) ("Competency . . . speaks to 'the power of a court to exercise its subject matter jurisdiction in a particular case' . . . [and] is set by statute . . . . '[T]he failure to comply with any statutory mandate' " goes to the court's competence to rule on the matter before it.). Whether the circuit court possessed competency to adjudicate a matter is a question of law we review de novo. *Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶ 24, 349 Wis. 2d 234, 833 N.W.2d 665.

■
¶ 10.   When seeking a declaratory judgment, the requirements of WIS. STAT. § 806.04 control. *See Milwaukee Dist. Council 48 v. Milwaukee Cty.*, 2001 WI 65, ¶ 35, 244 Wis. 2d 333, 627 N.W.2d 866 ("The power of courts to issue a declaratory judgment is statutory."). In *William B. Tanner Co. v. Estate of Fessler*, 100 Wis. 2d 437, 302 N.W.2d 414 (1981), our supreme court held that "[i]n a declaratory [judgment] action the failure to give the notice [to the attorney general] required by [§] 806.04(11) is fatal to the jurisdiction[7]

---

[7] In *William B. Tanner Co. v. Estate of Fessler*, 100 Wis. 2d 437, 443–44, 302 N.W.2d 414 (1981), the supreme court used the term "jurisdiction." In *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶¶ 1–2, 8–10, 273 Wis. 2d 76, 681 N.W.2d 190, the court made a key distinction between a circuit court having subject matter jurisdiction over a matter versus competency to decide a case. As the *Mikrut* court explained, subject matter jurisdiction is conferred upon a circuit court by the constitution

of the court," adding that "the maintenance of a declaratory action requires strict compliance with [§] 806.04." *Estate of Fessler*, 100 Wis. 2d at 443–44. Because S.R. and C.L. failed to serve the attorney general with this action seeking declaratory relief, the circuit court properly dismissed the matter due to its lack of competency to consider it.

¶ 11.   Both Wis. Stat. §§ 891.40 and 891.41 specifically refer to "husband," "wife" or "man" "married" to the "child's natural mother" and create a presumption that the husband of the wife who gives birth to a child is the father of the child in the circumstances described

---

and cannot be revoked by statute, while a "court's competency to adjudicate the particular case" before it may be lost based on a party's "failure to comply with a statutory mandate pertaining to the exercise of [the circuit court's] subject matter jurisdiction." *Id.*, ¶ 9. Based upon that distinction, we view the question before us as one of competency not jurisdiction. *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶ 27 n.8, 349 Wis. 2d 234, 833 N.W.2d 665:

> In some older cases, the concept of circuit court competency was often discussed as coextensive with the court's subject matter jurisdiction, but recent cases make clear that the two concepts are distinct and that it is competency, not subject matter jurisdiction, that may be lacking where statutory prerequisites are not followed.

*Id.* (citing *Mikrut*, 273 Wis. 2d 76, ¶¶ 8–9).

Whether a circuit court has competency to adjudicate a matter generally turns on whether a violated statutory requirement is "central to the statutory scheme." *See Xcel Energy Servs., Inc.*, 349 Wis. 2d 234, ¶ 24. In this case, we need not analyze whether service upon the attorney general is central to the statutory scheme of Wis. Stat. § 806.04 because our supreme court has already clearly stated failure to serve the attorney general is fatal to a circuit court's authority to adjudicate a declaratory action and "require[s] dismissal." *See Estate of Fessler*, 100 Wis. 2d at 443–44.

in those statutes. In their petition, one of their motions for reconsideration, and oral argument before the circuit court, S.R. and C.L. challenged the plain, gender-specific language of these statutes, asserting that in light of the *Wolf* decision, the language of these statutes must be "ungendered" by utilizing WIS. STAT. § 990.001(2). In their oral argument before the circuit court, one of their motions for reconsideration, and briefing on appeal, S.R. and C.L. argue that applying the plain text of these statutes, as written, would violate S.R.'s, C.L.'s, and P.L.L.-R.'s equal protection and substantive due process rights under the Fourteenth Amendment to the United States Constitution. Relying on their constitutional position, S.R. and C.L. sought in their petition, and request on appeal, an order declaring C.L. to be a legal parent of P.L.L.-R; declaring C.L. and S.R. to be equal legal parents of P.L.L.-R; declaring that the anonymous sperm donor is not a legal parent of P.L.L.-R; "directing the Wisconsin Department of Health Services, Vital Records Office, to identify [C.L. and S.R. as P.L.L.-R.'s] legal parents and to issue, or amend as may be the case, the child's birth certificate consistent with the order of this Court, listing both [C.L. and S.R.] as 'Parent' and 'Parent' "; and declaring other relief that may be appropriate.

¶ 12.   It was clear to the circuit court from S.R. and C.L.'s petition, other filings, and the hearing before the court that while S.R. and C.L. filed their petition as an adoption action, they were not interested in C.L. adopting P.L.L.-R. Indeed, this is undisputed. Filing this matter as an adoption action, S.R. and C.L. sought to advance their claims without having to pay the filing fee, as S.R. and C.L.'s counsel admitted to the circuit court, that otherwise would have been required if they had filed the matter as a declaratory judgment

or paternity action. *See* Wis. Stat. § 814.61(1)(a), (c) (identifying fees for filing declaratory judgment and paternity actions and that no fee is required for adoption action). The State further points out and complains that S.R. and C.L.'s decision to file this as an adoption action also permitted them to advance their claims before the circuit court unilaterally, that is, without another party, such as the State, having an opportunity to advocate an alternative position.

¶ 13.  On appeal, S.R. and C.L. continue to argue that "a narrow, gendered reading of the statutes in this case would raise constitutional questions," and that by denying their claim, the circuit court "violated the controlling precedent of *Wolf v. Walker*, thereby violating the equal protection and substantive due process rights of this couple, as they are enumerated and protected in that case." They further insist that the circuit court's ruling violated the equal protection and substantive due process rights of P.L.L.-R., and that their statutory interpretation "is necessary in order to extend to *all* children the benefits and protections created by the statutes at issue in this case, no matter the circumstances of their birth or the sex, sexual orientation, or marital status of their parents." In support of their position, S.R. and C.L. state the district court in *Wolf* (as affirmed by the Seventh Circuit), and subsequently the United States Supreme Court in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), resolved the constitutional issue that same-sex spouses are entitled to government benefits the same as opposite sex spouses. From this, they insist that after *Wolf* and *Obergefell*, C.L.'s status as a parent of P.L.L.-R. should be "automatic" pursuant to "ungendered" readings of Wis. Stat. §§ 891.40 and 891.41. However, as the same federal district court judge in

*Wolf* noted in an order a week after *Obergefell* was decided, *Obergefell* did not answer questions regarding Wisconsin's presumption of paternity statute, § 891.41. *See Wolf v. Walker*, No. 14–cv-64–bbc (Order, W.D. Wis. Jul. 6, 2015). Nor did *Obergefell* answer questions regarding Wisconsin's artificial insemination statute, § 891.40.

¶ 14.   This is no adoption case—as S.R. and C.L. have readily acknowledged. Whatever S.R. and C.L.'s reasons were for filing this matter as an adoption action when they never intended for C.L. to adopt P.L.L.-R., looking to the nature of the pleading we can only conclude that S.R. and C.L. ultimately were and are seeking a declaratory judgment. *See Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 45, 294 Wis. 2d 274, 717 N.W.2d 781 (stating that "the label given the claim in the complaint is not dispositive") (citation omitted). Where, as here, declaratory relief is sought on the basis that a statute is unconstitutional as written, "the attorney general shall . . . be served with a copy of the proceeding and be entitled to be heard." *See* WIS. STAT. § 806.04(11). Because the attorney general was never served and afforded an opportunity to be heard, the circuit court was without competency to hear the matter and appropriately dismissed it.

¶ 15.   For the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.