COURT OF APPEALS
DECISION
DATED AND FILED

September 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP2177-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF2126

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DESMOND J. WILHITE,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: JOSANN M. REYNOLDS, Judge. *Reversed and cause remanded with directions.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

¶1 KLOPPENBURG, P.J. In September 2022, Desmond Wilhite was committed to the care of the State of Wisconsin Department of Health Services (the department) as a person found not guilty by reason of mental disease or defect (generally, NGI acquittee or acquittee) on a charge of threat to a law enforcement

officer. The circuit court granted Wilhite conditional release from institutional care in February 2023. In February 2024, the court issued an order revoking Wilhite's conditional release and committing him to institutional care pursuant to WIS. STAT. § 971.17(3)(e) (2023-24).[1] Under this provision, a circuit court may revoke an NGI acquittee's conditional release and commit the acquittee to institutional care based on (1) the acquittee's violation of either a condition of release set by the court or a rule of the department, or (2) the acquittee's current dangerousness.

¶2 On appeal, Wilhite argues that WIS. STAT. § 971.17(3)(e) is facially unconstitutional to the extent that it permits a circuit court to revoke an NGI acquittee's conditional release and to commit the acquittee to institutional care based solely on the violation of a court-ordered condition or department rule without proof of current dangerousness. In support of his argument that it always violates due process to commit to institutional care a conditionally released acquittee without proof of dangerousness, Wilhite relies on the United States Supreme Court's decisions in *Jones v. United States*, 463 U.S. 354 (1983), and *Foucha v. Louisiana*, 504 U.S. 71 (1992), which hold that due process requires

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

Given the length of time that has elapsed since the circuit court's February 2024 order, we briefly explain the procedural history of this appeal. The state public defender appointed counsel in May 2024, and counsel filed the notice of appeal in October 2024. The parties completed briefing in May 2025, and the appeal was submitted to this court in June 2025. Wilhite was discharged from his commitment on June 2, 2025. In July 2025, the State notified this court that this appeal may be moot in light of Wilhite's discharge from his commitment. This court ordered the parties to file letter briefs addressing mootness, and the State subsequently filed a letter brief conceding that the appeal is not moot because Wilhite might face collateral consequences associated with his commitment, such as potential financial liability for the costs of placement.

that a court release an NGI acquittee from commitment when the acquittee is no longer dangerous. *Jones*, 463 U.S. at 368; *Foucha*, 504 U.S. at 77, 78 n.5.

¶3 We conclude, pursuant to the holdings in *Jones*, 463 U.S. at 368, and *Foucha*, 504 U.S. at 77, 78 n.5, that WIS. STAT. § 971.17(3)(e) is unconstitutional to the extent that it permits a circuit court to revoke an NGI acquittee's conditional release and commit the NGI acquittee to institutional care without a finding of dangerousness. We also conclude that the unconstitutional provisions in § 971.17(3)(e) are severable, and, therefore, we leave in place and deem operative the remainder of the statute. Because the circuit court order here revoked Wilhite's conditional release and committed him to institutional care without a finding of dangerousness, in violation of due process, we reverse and remand to the circuit court with directions to vacate the order.[2]

## BACKGROUND

¶4 In August 2019, the State charged Wilhite with threat to a law enforcement officer, resisting an officer, criminal damage to property, and disorderly conduct. Pursuant to a plea agreement in September 2022, Wilhite pleaded not guilty by reason of mental disease or defect (NGI) to the threat to a law enforcement officer charge.[3] The circuit court found Wilhite NGI, entered a

---

[2] In the alternative, Wilhite argues that the State failed to prove by clear and convincing evidence that he violated a court-ordered condition or a department rule. Because our resolution of Wilhite's facial constitutional challenge disposes of this appeal, we do not address Wilhite's alternative argument that the State failed to prove that he violated a condition or a rule.

[3] At the same plea hearing, Wilhite also pleaded NGI to several other charges in a different case. The order of commitment challenged in this case was entered only on the charge of threat to a law enforcement officer, and the facts regarding the other charges are not relevant to this appeal. Accordingly, we do not discuss the other case.

judgment of NGI, and ordered Wilhite committed to the department for three years.

¶5 In November 2022, the State stipulated to Wilhite's conditional release. Specifically, the State stipulated that Wilhite did not "currently pose a significant risk of harm to self, others, or property." The circuit court ordered Wilhite conditionally released in February 2023, determining that conditional release "would not pose a significant risk of bodily harm to the defendant or others, or of serious property damage," and further ordered that Wilhite be placed at the same community residential facility where he had previously been residing.

¶6 In February 2023, the department petitioned for revocation of Wilhite's conditional release based on allegations that Wilhite violated department rules. Later that month, Wilhite's treatment plan was adjusted, and the department withdrew the petition for revocation.

¶7 In October 2023, the department again petitioned for revocation of Wilhite's conditional release based on allegations that Wilhite violated department rules. The circuit court held a hearing at which the parties stipulated to withdrawal of the petition and to the addition of certain court-ordered conditions to Wilhite's conditional release. The court entered an order consistent with these stipulations.

¶8 In January 2024, the department petitioned again for revocation of Wilhite's conditional release, alleging that Wilhite violated department rules based on a recent incident. The circuit court held a hearing at which members of Wilhite's conditional release team, two of Wilhite's family members, and Wilhite testified.

¶9 At this hearing, the State asked the circuit court to revoke Wilhite's conditional release based on "clear and convincing evidence that rules [of Wilhite's conditional release] have been violated." Wilhite argued that the State had not proven by clear and convincing evidence that he had violated the department rules cited by the State. Wilhite also argued that, even if the court determined that there was clear and convincing evidence that Wilhite had violated department rules, the court should exercise its discretion not to revoke his conditional release because Wilhite's behavior, including his use of coping strategies, had been improving and because placing Wilhite in a state institution would destabilize his mental state.

¶10 In issuing its ruling, the circuit court determined that the State "has met its burden by clear and convincing evidence that [Wilhite] has violated his rules, and this is not a situation where I have to find dangerousness." The court said that it had "some significant trepidation and some serious concerns about what happens" if Wilhite were committed to institutional care, and also expressed the view that the "ideal result" would have been for the parties to agree to place Wilhite at a different community residential facility. At the same time, the court also expressed concern that Wilhite's behavior was "escalating" and noted that the State "petitioned three times now and withdrew the other petitions to bring him back to let him try again and yet here we are." The court ultimately decided to grant the petition for revocation of Wilhite's conditional release.

¶11 The circuit court entered a written order consistent with its oral ruling, checking boxes on a standardized form indicating that "[t]he State has proven by clear and convincing evidence that a rule or condition of release was violated." The court subsequently ordered Wilhite's placement at a specified state institution. Wilhite appeals.

**DISCUSSION**

¶12 Wilhite argues that WIS. STAT. § 971.17(3)(e) is facially unconstitutional to the extent that it does not require proof of dangerousness to revoke the conditional release of an NGI acquittee and to commit the acquittee to institutional care. We first address and reject the State's arguments that Wilhite forfeited his facial constitutional challenge and that this court lacks competency to hear that challenge. We next explain our conclusion that § 971.17(3)(e) is facially unconstitutional, and we reject the State's arguments to the contrary. We then address the remedy.

**I. Forfeiture and Competency**

¶13 It is not disputed that Wilhite did not raise his facial constitutional challenge to WIS. STAT. § 971.17(3)(e) in the circuit court and also that he did not file a motion for postdisposition relief under § 971.17(7m).[4]

¶14 Regarding the failure to raise the challenge in the circuit court, the State argues that Wilhite forfeited his facial constitutional challenge to WIS. STAT. § 971.17(3)(e). The State cites **State v. Klapps**, 2021 WI App 5, 395 Wis. 2d 743, 954 N.W.2d 38, in support of its argument. In **Klapps**, this court concluded that the defendant forfeited his claim of judicial bias, which was an alleged structural constitutional violation, by failing to raise it before the circuit court in a § 971.17(7m) postdisposition motion. **Klapps**, 395 Wis. 2d 743, ¶¶26-28, 32. However, **Klapps** is readily distinguishable from this case, in that this case

---

[4] WISCONSIN STAT. § 971.17(7m) provides, in pertinent part: "The person shall file a motion for postdisposition relief in the circuit court before a notice of appeal is filed unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised."

6

involves a facial challenge to the constitutionality of a statute—a claim that, as we next explain, cannot be forfeited pursuant to *State v. Bush*, 2005 WI 103, ¶17, 283 Wis. 2d 90, 699 N.W.2d 80.

¶15     "Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.  However, our supreme court has ruled that "a facial challenge [to the constitutionality of a statute] is a matter of subject matter jurisdiction and cannot be waived" or forfeited.  *Bush*, 283 Wis. 2d 90, ¶17; *see also* *Milwaukee County v. Mary F.-R.*, 2013 WI 92, ¶¶31-34, 351 Wis. 2d 273, 839 N.W.2d 581 (declining to revisit the rule stated in *Bush* and assuming without deciding that the defendant did not forfeit her facial constitutional challenge by failing to contemporaneously object in the circuit court); *State v. Talley*, 2015 WI App 4, ¶¶16-17, 359 Wis. 2d 522, 859 N.W.2d 155 (explaining that the State's argument that the defendant forfeited his facial constitutional challenge is "difficult[] [to] reconcil[e]" with *Bush*, and clarifying that *Mary F.-R.* did not modify or overrule *Bush*).  The State seeks to circumscribe the holding in *Bush*, but we are bound by it, and we reject the State's forfeiture argument on that basis.  *See* *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

¶16     Turning to Wilhite's failure to file a motion for postdisposition relief under WIS. STAT. § 971.17(7m), the State argues that, even if this does not deprive this court of subject matter jurisdiction, Wilhite's noncompliance with § 971.17(7m) deprives this court of competency to decide his facial constitutional challenge.  The State argues that "[t]hrough [§] 971.17(7m), the [l]egislature established a procedure that specifies what claims a litigant can raise on appeal: a

challenge to the sufficiency of the evidence, an issue previously raised, and a claim raised through a motion for postdisposition relief. As such, it is a rule of statutory competency because it limits what issues this [c]ourt can consider on appeal."

¶17 However, the State cites no legal authority regarding whether and under what circumstances the court of appeals, as opposed to a circuit court, may lack competency to consider a matter. Instead, the State cites *City of Cedarburg v. Hansen*, 2020 WI 11, 390 Wis. 2d 109, 938 N.W.2d 463, *State v. Sanders*, 2018 WI 51, 381 Wis. 2d 522, 912 N.W.2d 16, and *Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190, all of which address a circuit or municipal court's competency to hear a case. *See Hansen*, 390 Wis. 2d 109, ¶¶3, 48-51; *Sanders*, 381 Wis. 2d 522, ¶¶20-22; *Mikrut*, 273 Wis. 2d 76, ¶¶12-13. In addition, none of these cases address WIS. STAT. § 971.17(7m). The State does not explain how the cited case law applies to this court's competency in this NGI commitment case. We need not consider an argument that is not developed with supporting relevant legal authority. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, … and we will not abandon our neutrality to develop arguments.").[5]

¶18 Separately, in challenging the propriety of this appeal, the State argues that our review of Wilhite's facial constitutional challenge is foreclosed by

---

[5] To give just one example of potential issues that the State does not address in asserting its position, the State fails to illuminate the intersection of a doctrine of court of appeals competency (whatever that would precisely consist of in this context) and the rule that facial constitutional challenges cannot be forfeited, as we have explained.

his noncompliance with WIS. STAT. § 806.04(11). Section 806.04(11) provides, in pertinent part:

> If a statute … is alleged to be unconstitutional, or to be in violation of or preempted by federal law, or if the construction or validity of a statute is otherwise challenged, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard. If a statute is alleged to be unconstitutional, or to be in violation of or preempted by federal law, or if the construction or validity of a statute is otherwise challenged, the speaker of the assembly, the president of the senate, and the senate majority leader shall also be served with a copy of the proceeding, and the assembly, the senate, and the state legislature are entitled to be heard.

The State argues that Wilhite's filing of his initial appellant's brief does not constitute sufficient service on the attorney general. The State also points out that Wilhite did not serve the legislature before the State filed its response brief in this appeal, and from this argues that this court "should not allow [Wilhite] to prospectively cure the defect through service *after* the State files its brief in this matter."

¶19 To begin on this issue, the office of the attorney general does not suggest that the State has been in any way prejudiced based on a lack of sufficient notice or service by Wilhite.

¶20 On a related point, the attorney general represents the State in this action, and the attorney general was served with "a copy of the proceeding" challenging the facial constitutionality of WIS. STAT. § 971.17(3)(e) when Wilhite electronically filed his appellant's brief. *See* WIS. STAT. § 806.04(11). In addition, the purpose of the service rule, which is "to give the attorney general the opportunity to defend the statute … against a claim of unconstitutionality," was fulfilled when the attorney general filed a response brief in this court. *See Town*

*of Walworth v. Village of Fontana-on-Geneva Lake*, 85 Wis. 2d 432, 436, 270 N.W.2d 442 (Ct. App. 1978).

¶21    The State cites *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 280 N.W.2d 757 (1979), in which our supreme court concluded that the failure to serve the attorney general with a copy of a pleading challenging the constitutionality of a statute meant that the circuit court, and the reviewing appellate court, could not properly consider or review the constitutional challenge "because the parties did not give the [S]tate an opportunity to be heard." *Id.* at 117.   However, in *Kurtz*, unlike here, the attorney general's office did not appear on behalf of the State at any point, nor was the State a party. *See id.* at 105-06.   When, as here, the attorney general is given the opportunity to be heard in the court of appeals proceedings, and when there is no "claim or evidence that the interests of the [S]tate have been prejudiced by its lack of participation" in earlier proceedings, "the purpose of the *Kurtz* rule" is fulfilled. *See William B. Tanner Co. v. Estate of Fessler*, 100 Wis. 2d 437, 444, 302 N.W.2d 414 (1981), *abrogated on other grounds by Sears, Roebuck & Co. v. Plath*, 161 Wis. 2d 587, 468 N.W.2d 689 (1991).   Accordingly, "[t]here is no reason for refusing to consider" the merits of Wilhite's facial constitutional challenge based on his purported failure to serve the attorney general. *See Estate of Fessler*, 100 Wis. 2d at 444.

¶22    Wilhite concedes that he had not yet served legislative officials as of the time when the State filed its response brief.   However, he asserts, without contradiction by the State in any correspondence to this court, that Wilhite's counsel has "corrected this oversight by serving the speaker of the assembly, the president of the senate, and the senate majority leader."   Further, Wilhite argues that WIS. STAT. § 806.04(11) "does not prescribe the method or timing for providing notice to the legislature."   Because the assembly, senate, and legislature

10

may intervene at any time in this matter pursuant to WIS. STAT. § 13.365, Wilhite argues that this court should consider service timely. The State cites no legal authority to support its argument that serving the identified legislative leaders after the filing of the State's response brief violates § 806.04(11), and the statute does not set a deadline for service. Accordingly, we conclude that Wilhite complied with the requirements of the statute. *See **Wren v. Columbia St. Mary's Hosp. Milwaukee, Inc.***, 2025 WI App 22, ¶40, 415 Wis. 2d 758, 19 N.W.3d 614, *review granted*, 2025 WI 38 ("The plain language of the statute requires service, and having provided service in this matter, Wren satisfied the requirements of the statute."); ***Midwest Mut. Ins. Co. v. Nicolazzi***, 138 Wis. 2d 192, 203, 405 N.W.2d 732 (Ct. App. 1987) ("[W]e deem it within our powers to allow notice to the attorney general to be given even at this late date….").

¶23    We conclude that Wilhite's facial constitutional challenge to WIS. STAT. § 971.17(3)(e) is properly before this court, and, accordingly, we proceed to address it.

## II.  Facial Constitutional Challenge

¶24    To repeat, Wilhite argues that WIS. STAT. § 971.17(3)(e) is facially unconstitutional to the extent that it permits a court to revoke an NGI acquittee's conditional release and commit the acquittee to institutional care based solely on a finding that the acquittee violated a court-ordered condition or a department rule, and without a finding of dangerousness. Specifically, quoting ***Foucha***, 504 U.S. at 77, Wilhite argues that "without proof that a civil committee is currently 'both

mentally ill and dangerous,' confinement stemming from the commitment violates due process."[6]

¶25 A facial challenge to the constitutionality of a statute presents a question of law that this court reviews de novo. *Mayo v. Wisconsin Injured Patients and Fams. Comp. Fund*, 2018 WI 78, ¶23, 383 Wis. 2d 1, 914 N.W.2d 678. "A statute enjoys a presumption of constitutionality. To overcome that presumption, a party challenging a statute's constitutionality bears a heavy burden." *State v. Smith*, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90 (citation omitted). That party "must prove that the challenged statute is unconstitutional beyond a reasonable doubt." *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. To succeed on a facial constitutional challenge, the party challenging the statute "must show that the law cannot be enforced 'under any circumstances.'" *Id.*, ¶13 (quoted source omitted).

> While a statute should be held valid whenever by any fair
> interpretation it may be construed to serve a constitutional

---

[6] Wilhite does not develop a supported argument that WIS. STAT. § 971.17(3)(e) is facially unconstitutional to the extent that it permits a circuit court to revoke an NGI acquittee's conditional release and commit the acquittee to institutional care without a finding of current mental illness. We resolve this appeal solely based on the failure of the statute to require proof of current dangerousness. We express no views about the constitutionality of the current statute as it exists after our severance of the provisions that we deem unconstitutional today, leaving in place and operative the remainder of the statute.

In addition, in this opinion we use the word "dangerous" as shorthand for "pos[ing] a significant risk of bodily harm to [the NGI acquittee]." *See State v. Randall*, 192 Wis. 2d 800, 838, 532 N.W.2d 94 (1995) (explaining that in making a dangerousness determination, that is, "that the person would pose a significant risk of bodily harm to [the person's self] or to others or of serious property damage," the court may consider the factors set forth in WIS. STAT. § 971.17(4)(d) (concerning an NGI acquittee's petition for conditional release from department custody)); *State v. Wood*, 2010 WI 17, ¶35, 323 Wis. 2d 321, 780 N.W.2d 63 (explaining that "a significant risk of bodily harm to [the person's self] or to others or of serious property damage" under § 971.17(3)(a) (concerning the initial commitment and institutional placement of an NGI acquittee) is the "equivalent of dangerousness").

> purpose, courts cannot go beyond the province of legitimate construction to save it, and where the meaning is plain, words cannot be read into it or out of it for the purpose of saving one or other possible alternative.

*State v. Hall*, 207 Wis. 2d 54, 82, 557 N.W.2d 778 (1997).

### A. Statutory Scheme

¶26 We now set forth pertinent parts of the statutory scheme governing the commitment, conditional release, and revocation of conditional release of NGI acquittees such as Wilhite. When a defendant pleads NGI, without joining that plea with a plea of not guilty, the defendant "admits that but for lack of mental capacity the defendant committed all the essential elements of the offense charged in the indictment, information or complaint." WIS. STAT. § 971.06(1)(d). If the defendant is found NGI of a felony not punishable by life imprisonment, the circuit court "shall enter a judgment of not guilty by reason of mental disease or defect," WIS. STAT. § 971.165(3)(b), and the court "shall commit the person to the department of health services for a specified period not exceeding the maximum term of confinement in prison that could be imposed on an offender convicted of the same felony," subject to certain enhancements not applicable here, WIS. STAT. § 971.17(1)(b). The court's order for commitment

> shall specify either institutional care or conditional release. The court shall order institutional care if it finds by clear and convincing evidence that conditional release of the person would pose a significant risk of bodily harm to [the person's self] or to others or of serious property damage. If the court does not make this finding, it shall order conditional release.

§ 971.17(3)(a).

¶27 When a circuit court orders conditional release, the department submits to the circuit court a plan for the NGI acquittee's treatment and services.

13

WIS. STAT. § 971.17(3)(d). After release, the acquittee "is subject to the conditions set by the court" in ordering the conditional release, "and to the rules of the department of health services." § 971.17(3)(e).

¶28 We now come to the key language at issue in this appeal. If the department alleges that the conditionally released NGI acquittee "has violated any condition or rule, *or* that the safety of the person or others requires that conditional release be revoked," the department shall submit to the circuit court a petition to revoke conditional release, along with a statement of probable cause. WIS. STAT. § 971.17(3)(e) (emphasis added). "The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, *or* that the safety of the person or others requires that conditional release be revoked." § 971.17(3)(e) (emphasis added). "If the court determines after hearing that any rule or condition of release has been violated, *or* that the safety of the person or others requires that conditional release be revoked, it may revoke the order for conditional release" and order institutional care "until the expiration of the commitment or until again conditionally released under this section." § 971.17(3)(e) (emphasis added).

¶29 Turning to additional provisions that provide context, an NGI acquittee who is committed for institutional care may petition the circuit court to authorize conditional release "if at least 6 months have elapsed since the initial commitment order was entered, the most recent release petition was denied[,] or the most recent order for conditional release was revoked." WIS. STAT. § 971.17(4)(a). After the court appoints an examiner and receives the examiner's report within a specified time frame, the court "shall grant the petition unless it finds by clear and convincing evidence that the person" would be dangerous if conditionally released. § 971.17(4)(c)-(d).

14

¶30 We pause to observe that, under this statutory scheme, whenever the State seeks to commit an NGI acquittee who has been conditionally released, the circuit court has necessarily made a previous finding (as of the time of the conditional release) that the State did not present clear and convincing evidence that the NGI acquittee is dangerous, whether or not the State attempted to make such a showing. WIS. STAT. § 971.17(3)(a), (4)(d).

### B. United States Supreme Court Case Law

¶31 In arguing that WIS. STAT. § 971.17(3)(e) is unconstitutional, Wilhite relies primarily on *Jones*, 463 U.S. 354, and *Foucha*, 504 U.S. 71, and we now summarize pertinent aspects of those opinions.

¶32 In *Jones*, the Supreme Court considered the constitutionality of a District of Columbia code provision that, among other things, allowed the commitment of NGI acquittees to institutional care until, as pertinent here, the acquittees prove by a preponderance of the evidence that they are no longer mentally ill or no longer dangerous. *Jones*, 463 U.S. at 356-58. Stating that due process "'requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed,'" the Court rejected Jones's argument that he was entitled to release because he had been committed to institutional care for a period longer than he could have been incarcerated if convicted in the criminal case. *Id.* at 368 (quoted source omitted). The Court explained that "[t]he purpose of commitment following an [NGI] acquittal … is to treat the individual's mental illness and protect [the individual] and society from [the individual's] potential dangerousness." *Id.* The Court further stated that, "because it is impossible to predict how long it will take for any given individual to recover," it is reasonable and comports with due process to

"leave the length of commitment indeterminate." *Id.* In the course of this discussion, the Court clarified that "[t]he committed acquittee is entitled to release when [the acquittee] has recovered [the acquittee's] sanity or is no longer dangerous." *Id.* The import of this statement was that due process requires that an NGI acquittee be entitled to release when either mental illness or dangerousness is no longer shown.

¶33 The Supreme Court also held in *Jones* that an NGI acquittal provides sufficient proof of continuing mental illness and dangerousness to justify commitment immediately following an NGI verdict. *Id.* at 366. The Court acknowledged that "[t]he precise evidentiary force of the [NGI] acquittal," with respect to both mental illness and dangerousness, "may vary from case to case." *Id.* But the Court stated that "the Due Process Clause does not require [the legislature] to make classifications that fit every individual with the same degree of relevance." *Id.* Immediately following this conclusion, the Court explained that the procedure in the code at issue, which entitled an NGI acquittee who has been initially committed to a hearing, "at which [the acquittee] has the burden of proving by a preponderance of the evidence that [the acquittee] is no longer mentally ill or dangerous," within 50 days of the initial commitment, provided the "assurance" sufficient to satisfy due process "that every acquittee has prompt opportunity to obtain release if [the acquittee] has recovered." *Id.* at 357, 366. In other words, the Court explained that the finding of dangerousness required by the Due Process Clause for commitment is initially satisfied by the establishment through the NGI acquittal process that the NGI acquittee committed a criminal act, but that such a finding does not satisfy the Due Process Clause with respect to dangerousness at times following the initial commitment. *Id.* at 366, 368.

16

¶34    After *Jones*, in *Foucha*, the Supreme Court considered the constitutionality of a Louisiana statute that allowed the state to commit an NGI acquittee until the acquittee proved that the acquittee was not dangerous, regardless of whether the acquittee was or was not mentally ill. *Foucha*, 504 U.S. at 73. Foucha petitioned for release from commitment, and two doctors provided evidence that Foucha was no longer mentally ill. *Id.* at 74. One doctor reported that Foucha had an antisocial personality that was untreatable and that the doctor "would not 'feel comfortable in certifying that [Foucha] would not be a danger to himself or to other people.'" *Id.* at 75. The circuit court ruled that Foucha was dangerous and denied his petition for release on that basis. *Id.* Foucha appealed, and the Supreme Court held that "the basis for holding Foucha in a psychiatric facility as an [NGI] acquittee … disappeared" when Louisiana conceded that Foucha was no longer mentally ill, and that Louisiana was "no longer entitled to hold him on that basis." *Id.* at 78.

¶35    In support, the Supreme Court quoted *Jones*, explaining that "'the Constitution permits the Government, on the basis of the [NGI] judgment, to confine [the NGI acquittee] to a mental institution until such time as [the acquittee] has regained [the acquittee's] sanity or is no longer a danger to [the acquittee's self] or society.'" *Foucha*, 504 U.S. at 77-78 (quoting *Jones*, 463 U.S. at 370). The Court explained that "[t]he court below was in error in characterizing the above language from *Jones* as merely an interpretation of the pertinent statutory law … and as having no constitutional significance." *Foucha*, 504 U.S. at 78. The Court emphasized that an NGI acquittee "could be held" only "until [the acquittee] was no longer mentally ill or no longer dangerous," and that this defines "the outside limits on the detention of [NGI] acquittees." *Id.* at 78 n.5.

¶36 The Supreme Court then explained why Foucha's antisocial personality and the finding that this condition rendered him dangerous were constitutionally insufficient to justify his commitment to institutional care. The first two reasons for the Court's holding, which were based on the lack of a finding of mental illness, are not relevant to this appeal. *See id.* at 78-79. The third reason was that the Due Process Clause protects the right to "[f]reedom from bodily restraint … from arbitrary governmental action." *Id.* at 80. The Court explained: "'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Id.* (quoted source omitted). "A State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution…. Here, the State has no such punitive interest. As Foucha was not convicted, he may not be punished." *Id.*; *see also* WIS. STAT. § 971.17(1)(b) (permitting commitment of NGI acquittees for up to the amount of time they could have been incarcerated if "convicted of the same felony"); *State v. Fugere*, 2019 WI 33, ¶32, 386 Wis. 2d 76, 924 N.W.2d 469 (commitment as a result of an NGI verdict is civil and "is not 'punishment'" (quoted source omitted)). *But see State v. Randall*, 192 Wis. 2d 800, 806 n.2, 532 N.W.2d 94 (1995) ("We use the term[] … 'acquittee' … to refer to an individual who has been tried and convicted of a criminal offense and subsequently excused from responsibility … as a result of … mental disease or defect….").

¶37 The Supreme Court acknowledged that "in certain narrow circumstances persons who pose a danger to others or to the community may be subject to limited confinement" without a finding of mental illness, but explained that Louisiana's statutory scheme did not purport to address any such "narrow circumstances." *Foucha*, 504 U.S. at 80-82. As pertinent to this appeal, the Court

reaffirmed the rule in **Jones** that, consistent with due process, an NGI acquittee "may be held as long as [the acquittee] is both mentally ill and dangerous, but no longer." **Foucha**, 504 U.S. at 77.

### C. Wisconsin Case Law

¶38      Our supreme court addressed the **Foucha** decision in **Randall**, 192 Wis. 2d 800.   Specifically, in **Randall**, our supreme court considered whether, based on **Foucha**, "the Wisconsin statutory scheme, which allow[ed] the [S]tate to confine an [NGI] acquittee who is no longer mentally ill, solely on the grounds that the individual [wa]s a danger to [the acquittee's self] or others, violate[d] the Due Process Clause." **Randall**, 192 Wis. 2d at 806 (footnote omitted).  The statute at issue in **Randall**, WIS. STAT. § 971.17(2) (1987-88), differs significantly from the statute at issue in this case, WIS. STAT. § 971.17(3)(e).  Under the statute at issue in **Randall**, a finding of dangerousness was required to deny a petition for conditional release of a committed acquittee, and commitment was not allowed based solely on the violation of a court-ordered condition or department rule.  *See* § 971.17(2) (1987-88).  The court concluded that "it is not a denial of due process for an [NGI] acquittee who has committed a criminal act to be confined in a state mental health facility for so long as [the acquittee] is considered dangerous, provided that the commitment does not exceed the maximum term of imprisonment which could have been imposed for the offense charged." **Randall**, 192 Wis. 2d at 806-07.

¶39      The **Randall** court interpreted **Foucha** to hold that, when there is not such a limit on the maximum duration of the commitment, it is permissible to commit an NGI acquittee only until the acquittee "is either no longer mentally ill or no longer dangerous." **Randall**, 192 Wis. 2d at 840-41.  But the **Randall** court

concluded that, consistent with this proposition, when an NGI acquittee petitions for conditional release, the acquittee may continue to be committed

> *based on dangerousness alone*, … when all of the following criteria are met: (1) the maximum duration of the commitment is limited to reflect the acquittee's specific crimes; (2) the burden of proof at the hearing for recommitment or release is borne by the state; and (3) the acquittee is confined in a facility appropriate to [the acquittee's] mental condition.

*Id.* at 841 (emphasis added). The court ruled that Wisconsin's statutory scheme, which permitted continued commitment based on dangerousness alone, without a showing of mental illness, did not violate due process because it complied with these three criteria and required a showing of dangerousness. *Id.*; *see also Foucha*, 504 U.S. at 80 (explaining that "in certain narrow circumstances persons who pose a danger to others or to the community may be subject to limited confinement" without a showing of mental illness).

## D. Analysis

¶40 Together, *Jones*, *Foucha*, and *Randall* teach that due process permits and requires the following in this context. A circuit court may generally commit an NGI acquittee to institutional care immediately following an NGI verdict, because such a verdict establishes that: (1) "the defendant committed an act that constitutes a criminal offense"; and (2) the defendant "committed the act because of mental illness," and these are sufficiently probative, across cases, of continuing mental illness and dangerousness so as to satisfy the Due Process Clause's requirement of a finding of dangerousness for commitment. *See Jones*, 463 U.S. at 363-64. However, as pertinent here, if a court finds that an NGI acquittee is no longer dangerous, the court must release the acquittee because the constitution prohibits continued commitment. *Foucha*, 504 U.S. at 77-78;

*Randall*, 192 Wis. 2d at 840-41. In other words, after the initial period of commitment and following conditional release, the inference of dangerousness from an NGI verdict is no longer sufficient to justify commitment; rather, dangerousness must be established as a matter of fact.

¶41 It follows from this that, to avoid violating due process, a circuit court may not commit to institutional care a conditionally released NGI acquittee without making a new finding of dangerousness. This is because in all such cases the court has previously determined that there was not clear and convincing evidence that the acquittee is dangerous. *See Foucha*, 504 U.S. at 78 n.5 (an NGI acquittee may not be committed to institutional care without a finding of dangerousness because this violates the Due Process Clause); WIS. STAT. § 971.17(3)(a), (4)(d) (court shall order conditional release unless it finds clear and convincing evidence of dangerousness).

¶42 We recognize that the statute enjoys a presumption of constitutionality. But we conclude that Wilhite has carried the heavy burden of showing that WIS. STAT. § 971.17(3)(e) contains a flaw on the dangerousness issue that prevents constitutional enforcement under any circumstances. As we have explained, an NGI acquittee may not be committed to institutional care following conditional release, consistent with due process, unless the circuit court finds that the acquittee is dangerous. *See Foucha*, 504 U.S. at 78 n.5 (An NGI acquittee may not be held when the acquittee is "no longer dangerous." This defines "the outside limits on the detention of [NGI] acquittees."); *Randall*, 192 Wis. 2d at 833-34 (The State may commit an NGI acquittee to institutional care "based on dangerousness alone" if the State "provides the acquittee with care and treatment to overcome that which makes [the acquittee] dangerous."). Accordingly, we conclude that § 971.17(3)(e) is facially unconstitutional to the extent that it

permits the commitment to institutional care of a conditionally released NGI acquittee based solely on a finding that "any rule or condition of release has been violated," without a finding of dangerousness. *See* § 971.17(3)(e).

*E. State's Arguments*

¶43 We now address and reject the State's substantive arguments to the contrary. The State asserts that Wilhite's challenge "proceeds on the flawed assumption that, as an [NGI] acquittee, he has the *same* constitutional rights as a person who has been committed civilly." The State repeatedly states the proposition that "[NGI] acquittees constitute a special class that should be treated differently from other candidates for commitment." *See Jones*, 463 U.S. at 370. But the State does not explain the significance of this proposition in the present context or develop this into an argument for the statute's constitutionality, and we reject it on that basis. *See Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (stating that this court need not address arguments that are conclusory and insufficiently developed).

¶44 For the sake of completeness, we address the more salient aspects of the State's references to civil commitments as best we understand them. The State is correct that "the fact that a person who has been found [NGI] has committed a criminal act demonstrates a degree of dangerousness to society that may be lacking in the actions of one who is civilly committed." *State v. Field*, 118 Wis. 2d 269, 283, 347 N.W.2d 365 (1984). As explained above, given the fact that the criminal act occurred as a result of mental illness, courts may generally order commitment to institutional care immediately following the NGI verdict. *See Jones*, 463 U.S. at 370 ("[W]hen a criminal defendant establishes by a

22

preponderance of the evidence that [the defendant] is [NGI], the Constitution permits the Government, on the basis of the [NGI] judgment, to confine [the defendant] to a mental institution until … [the defendant] … is no longer a danger to [the defendant's self] or society."). But it remains that an NGI acquittee who has been determined by a court, since the time of the NGI verdict, not to be dangerous stands in different shoes from the NGI acquittee at the time of the verdict, and due process requires a finding of dangerousness before commitment after conditional release can be ordered.

¶45 To the extent that the State means to suggest that the due process protections in *Jones* and *Foucha* should not apply to NGI acquittees, this is directly refuted by the holdings in *Jones* and *Foucha* that we have summarized above. *See Jones*, 463 U.S. at 368; *Foucha*, 504 U.S. at 78.

¶46 The State argues that *Foucha* does not apply because WIS. STAT. § 971.17 "differs significantly" from the Louisiana statute at issue in *Foucha* in three respects. We address the three points in turn.

¶47 The State asserts, as a purported first difference, that under the Wisconsin statutory scheme an NGI acquittee has been found beyond a reasonable doubt to have committed a crime, and "[i]t is the determination of guilt which provides the basis for the [S]tate to incapacitate and treat the [NGI] acquittee." *See Randall*, 192 Wis. 2d at 833. But the State fails to show how this feature of Wisconsin law differed from the Louisiana statutory scheme at issue in *Foucha*.[7]

---

[7] The State also appears to overlook that, as in Wisconsin, the statute at issue in *Jones* required the government to prove beyond a reasonable doubt that the acquittee had committed a crime. *See Jones v. United States*, 463 U.S. 354, 356 n.2 (1983) (statute provided that if a defendant was "'acquitted solely on the ground that [the defendant] was insane at the time of [the crime's] commission, [the defendant] shall be committed'" (quoted source omitted)).

In any case, while it does not violate due process for a court to immediately order commitment following an NGI verdict because of the inference of continuing mental illness and dangerousness that generally arises from an NGI verdict and proof beyond a reasonable doubt that the defendant's conduct satisfies the elements of a criminal law violation, *Jones*, 463 U.S. at 363-64, that is not what is at issue here. Instead, we address the commitment after conditional release of an NGI acquittee, which, as we have emphasized, post-dates a court determination that there was not clear and convincing evidence that the acquittee was dangerous. *See* WIS. STAT. § 971.17(3)(a), 4(d) (requiring conditional release if court does not find by clear and convincing evidence that the NGI acquittee is dangerous).

¶48 The State does identify a second difference, but it is irrelevant. The difference is that, in Wisconsin, an NGI acquittee may be committed only up to the amount of time that the individual could have been imprisoned for the underlying offense, while in Louisiana, an NGI acquittee could remain committed for any amount of time. Our supreme court found this relevant in *Randall*, but only to the extent that it, in combination with other protections, allows a court to order the commitment of an NGI acquittee based on dangerousness alone, regardless of whether the acquittee is mentally ill. *See Randall*, 192 Wis. 2d at 833-34.

¶49 It is the same with the third difference identified by the State. This is that Louisiana's statutory scheme did not require Louisiana to "prove by clear and convincing evidence that [the NGI acquittee was] demonstrably dangerous to the community" to justify continued commitment. *See Foucha*, 504 U.S. at 81. In contrast, the State asserts, the Wisconsin statutory scheme requires the State to prove by clear and convincing evidence that the NGI acquittee is dangerous in order to support a circuit court's denial of a petition for conditional release at six-

month intervals following commitment. WIS. STAT. § 971.17(4)(d). However, the State does not explain how requiring it to prove dangerousness at six-month intervals to support *denial of* petitions for conditional release is relevant to the constitutionality of permitting commitment *after* conditional release without proving dangerousness.[8]

¶50 Separately, the State directs us to a decision by the Colorado Court of Appeals, which rejected an argument that an NGI acquittee could not constitutionally be committed following conditional release "based solely on the violation of a condition without additional findings of a mental illness and dangerousness." *See **People v. Garlotte***, 958 P.2d 469, 476 (Colo. App. 1997). We reject the State's characterization of this decision as persuasive because the Colorado court relied on the requirement, set forth in Colorado case law, that a condition, the violation of which is cited to justify revocation of conditional release, must be substantially related to the NGI acquittee's mental illness in a way that implicates dangerousness. *See **id.*** at 477-78. As we explain, that requirement is not present in Wisconsin law.

---

[8] The State relies on Justice O'Connor's concurrence in ***Foucha***, in which she stated that the opinion "addresses only the specific statutory scheme before us." *See **Foucha v. United States***, 504 U.S. 71, 87 (1992) (O'Connor, J., concurring). However, while Justice O'Connor was the deciding vote in ***Foucha***, she joined the opinion of the court, and, accordingly, her concurrence is not the opinion of the court. *See **Maryland v. Wilson***, 519 U.S. 408, 412-13 (1997) (statements in concurrence are not binding precedent); *cf.* ***United States v. Nordic Vill. Inc.***, 503 U.S. 30, 33 (1992) (explaining that where the Supreme Court is equally divided on an issue and there is no opinion of the court, the deciding vote of the concurrence is binding). Justice O'Connor's concurrence was not joined by any other justice, and the majority opinion in ***Foucha*** does not contain any language limiting its due process holding to only the specific statutory scheme before it.

¶51    Like WIS. STAT. § 971.17(3)(e), the statute governing commitment following conditional release in Colorado stated that an NGI acquittee could be committed if:

> "the [NGI acquittee] has violated one or more conditions in [the acquittee's] release, *or* the [acquittee] is suffering from a mental disease or defect which is likely to cause [the acquittee] to be dangerous to [the acquittee's self], to others, or to the community in the reasonably foreseeable future, if [the acquittee] is permitted to remain on conditional release."

*Garlotte*, 958 P.2d at 475 (emphasis added) (quoting Colorado statutes).   In *Garlotte*, the circuit court revoked Garlotte's conditional release and committed him to institutional care based on violations of his conditions of release.  *Id.* at 472-73.  Garlotte argued that the Colorado statute violated due process, pursuant to *Foucha*, 504 U.S. 71, because it did not require a finding of both mental illness and dangerousness in order to commit a conditionally released NGI acquittee. *Garlotte*, 958 P.2d at 471, 473.

¶52    The Colorado Court of Appeals acknowledged that the Court in *Foucha* "held that due process requires both mental illness and dangerousness in order to extend [a] commitment."  *Garlotte*, 958 P.2d at 473.  The court then concluded that, under Colorado law, an NGI acquittee's conditional release could be revoked

> solely because a release condition has been violated without infringing upon due process, provided that the condition violated bears a substantial relationship to the prevention of recurring mental illness or the management of an [NGI] acquittee's existing mental illness, and to the prevention of future dangerousness arising from the mental illness.

*Id.* at 477. In reaching this conclusion, the court relied on Colorado case law establishing that conditions of release for NGI acquittees must be "necessary and related to the goal of keeping [the acquittee] on conditional release by managing [the acquittee's] mental illness *and protecting the public*." *Id.* at 476-77 (emphasis added) (citing *People v. McCoy*, 821 P.2d 873 (Colo. App. 1991), *Scheidt v. Meredith*, 307 F. Supp. 63 (D. Colo. 1970), and *Campbell v. District Ct.*, 577 P.2d 1096 (Colo. 1978)). The court further explained that Colorado bears

> the burden of proving that the condition violated, and on which revocation of the conditional release is based, is substantially related to the abnormal and dangerous behavior which resulted in the initial commitment; that such condition bears a substantial relation to the [NGI acquittee's] abnormal mental condition and propensity toward dangerousness; and that it is tailored to serve the best interests of both the [acquittee] and the community.

*Garlotte*, 958 P.2d at 478.

¶53 Unlike in Colorado, there is no statutory directive or case law in Wisconsin that requires that conditions of release ordered by circuit courts or rules established by the department be "necessary and related to the goal of … managing [the NGI acquittee's] mental illness and protecting the public," or that the conditions "bear[] a substantial relationship … to the prevention of future dangerousness arising from the mental illness." *See id.* at 476-77. To the contrary, the Wisconsin legislature amended WIS. STAT. § 971.17 in 1990 to specifically remove the requirement of a finding of dangerousness from the standard for commitment after conditional release. *See* 1989 Wis. Act 334, § 5 (repealing WIS. STAT. § 971.17 (1987-88) and recreating the statute to allow commitment after conditional release based on evidence of a court-ordered condition or department rule violation *or* dangerousness); § 971.17(3) (1987-88)

27

(requiring commitment after conditional release based on evidence of both a court-ordered condition violation *and* dangerousness).

¶54    The Colorado case is not persuasive in the Wisconsin context, because this statutory history and the lack of case law in Wisconsin establish that WIS. STAT. § 971.17(3)(e) does not include a requirement that a condition or rule that applies to an NGI acquittee's release be substantially related to the acquittee's mental illness in a way that implicates dangerousness.   Accordingly, we lack a basis to adopt Colorado's interpretation to preserve the Wisconsin statute's constitutionality.

¶55    The State also argues that *Randall* stands for the proposition that committing an NGI acquittee after conditional release for a limited duration without a finding of dangerousness does not violate due process.  Specifically, the State's argument proceeds as follows: (1) one of the two "legitimate purposes of commitment" following an NGI acquittal is to treat an NGI acquittee for one or more mental illnesses, *see Randall*, 192 Wis. 2d at 833; and (2) violations of conditions and rules, while not jeopardizing safety, may interfere with such treatment; therefore, (3) commitment without a finding of dangerousness satisfies due process because, in the words of *Randall*, "there is a reasonable relationship between the nature of the commitment and the purposes for which the individual is committed," *see id.* at 837-38.   This argument takes language in *Randall* completely out of context.  As explained above, *Randall* holds that commitment without a finding of mental illness satisfies due process because confinement based on dangerousness alone may satisfy due process under certain narrow circumstances.

28

¶56 In reaching the conclusion that WIS. STAT. § 971.17(2) (1987-88) was constitutional despite requiring only a showing of dangerousness, and not mental illness, the *Randall* court explained that

> [i]ncapacitation for the purposes of treatment and rehabilitation, limited to the maximum term which could have been imposed for the criminal conduct, does not turn commitment into an impermissible form of incarceration so long as the [S]tate houses the acquittee in a facility appropriate to [the acquittee's] condition and provides the acquittee with care and treatment to overcome that which makes [the acquittee] dangerous.

*Randall*, 192 Wis. 2d at 833-34. This is consistent with *Foucha*'s acknowledgement that "in certain narrow circumstances," individuals "may be subject to limited confinement" based on findings of dangerousness alone. *See Foucha*, 504 U.S. at 80.

¶57 Accordingly, we do not read *Randall*, as the State suggests, to establish that due process permits commitment of an NGI acquittee following conditional release so long as "there is a reasonable relationship between the nature of the commitment and the purposes for which the individual is committed." *See Randall*, 192 Wis. 2d at 837-38. That language, taken in context, is in specific reference to the statutory scheme that permitted continued commitment based on dangerousness alone, without a showing of mental illness. *See id.* ("we hold that [WIS. STAT. §] 971.17(2) … (1987-88) does not violate due process because we conclude that…"). While both *Randall* and *Jones* state that treating mental illness is one of the legitimate purposes of commitment immediately following an NGI verdict, neither opinion suggests that commitment without a finding of dangerousness satisfies due process. We reject the State's argument to the contrary.

29

¶58    The State also argues, quoting *State v. Burris*, 2004 WI 91, ¶72, 273 Wis. 2d 294, 682 N.W.2d 812, that "the circuit court should not have had to wait for Wilhite to engage in additional 'overtly dangerous acts' before it revoked release." The State asserts that our ruling today "would make courts powerless to enforce their rules and conditions of release absent a showing of overt dangerousness." However, as we have explained, the Supreme Court made clear in *Foucha* and *Jones* that due process requires a showing of dangerousness before a court can commit a conditionally released NGI acquittee to institutional care, but those opinions did not purport to establish a degree of required dangerousness or to limit the appropriate methods of showing dangerousness. *See Portage County v. J.W.K.*, 2019 WI 54, ¶16, 386 Wis. 2d 672, 927 N.W.2d 509 (the United States Supreme Court "'has declined to prescribe strict boundaries for legislative determinations of what degree of dangerousness is necessary'" (quoted source omitted)); *Burris*, 273 Wis. 2d 294, ¶72 (explaining that, when determining dangerousness, a circuit court is "not required to ignore indications that a … person has disregarded the rules … in the past and will do so in the future"). We reject the State's implicit argument that, if we conclude that the statute is unconstitutional to the extent that it permits commitment without a finding of dangerousness, we are necessarily creating a standard of dangerousness that runs contrary to this case law.

## F. Remedy

¶59    The State argues that if we conclude, as we have, that WIS. STAT. § 971.17(3)(e) is facially unconstitutional based on the absence of a requirement to find dangerousness, we should sever the portion of the statute that allows revocation based on proof of a condition or rule violation only and remand to the

circuit court to provide the State with the opportunity to attempt to prove, and the court to consider finding, dangerousness.

¶60 WISCONSIN STAT. § 990.001(11) provides: "The provisions of the statutes are severable…. If any provision of the statutes … is invalid, … such invalidity shall not affect other provisions … which can be given effect without the invalid provision…." Our supreme court has further explained:

> "Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability." "Unless it is evident that the [l]egislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."

*State v. Janssen*, 219 Wis. 2d 362, 379, 580 N.W.2d 260 (1998) (citation and quoted source omitted).

¶61 We conclude that, given the presumption in favor of severability, *see id.*, the portions of WIS. STAT. § 971.17(3)(e) referring to condition or rule violations should be severed, leaving the remainder of the statute unaffected by today's opinion. Section 971.17(3)(e) contains three specific references to the violation of a condition or rule "or" dangerousness, which we quote and place in italics: (1) the department may take a conditionally released NGI acquittee into custody if it alleges *"that [the] released person has violated any condition or rule, or"* that the person is dangerous and the department submits a statement showing probable cause and a petition for revocation; (2) the State has the burden of proving by clear and convincing evidence *"that any rule or condition of release has been violated, or"* that the person is dangerous at a hearing within 30 days of the department taking the person into custody; and (3) the court may revoke

conditional release and commit the released person if it determines after a hearing *"that any rule or condition of release has been violated, or"* that the person is dangerous. § 971.17(3)(e). What remains after deleting each of these three quoted and italicized phrases from § 971.17(3)(e) is not affected by this opinion. The result is that the department may take a conditionally released NGI acquittee into custody based on an allegation of dangerousness, the State must show dangerousness by clear and convincing evidence, and the court may commit the NGI acquittee if it finds dangerousness. *See* § 971.17(3)(e).[9]

---

[9] As severed consistent with this opinion, WIS. STAT. § 971.17(3)(e) reads as follows:

> An order for conditional release places the person in the custody and control of the department of health services. A conditionally released person is subject to the conditions set by the court and to the rules of the department of health services. Before a person is conditionally released by the court under this subsection, the court shall so notify the municipal police department and county sheriff for the area where the person will be residing. The notification requirement under this paragraph does not apply if a municipal department or county sheriff submits to the court a written statement waiving the right to be notified. If the department of health services alleges … that the safety of the person or others requires that conditional release be revoked, he or she may be taken into custody under the rules of the department. The department of health services shall submit a statement showing probable cause of the detention and a petition to revoke the order for conditional release to the committing court and the regional office of the state public defender responsible for handling cases in the county where the committing court is located within 72 hours after the detention, excluding Saturdays, Sundays, and legal holidays. The court shall hear the petition within 30 days, unless the hearing or time deadline is waived by the detained person. Pending the revocation hearing, the department of health services may detain the person in a jail or in a hospital, center or facility specified by [WIS. STAT. §] 51.15(2)(d). The state has the burden of proving by clear and convincing evidence … that the safety of the person or others requires that conditional release be revoked. If the court determines after hearing that … the safety of the person or others requires that conditional release be revoked, it may revoke the order for conditional release and order that the released

(continued)

¶62 Wilhite asserts that, as severed, the statute would not require a finding of dangerousness to commit a conditionally released NGI acquittee. However, as reflected in footnote 9 *supra*, after one has severed the three phrases in WIS. STAT. § 971.17(3)(e) regarding rule or condition violations, the statute that remains requires the State to show dangerousness by clear and convincing evidence in order for the circuit court to commit a conditionally released NGI acquittee.

¶63 At the same time, we reject the State's essentially unsupported position that this court, having determined that the provision is unconstitutional in the manner explained, should remand to the circuit court to allow the State to attempt to prove Wilhite's dangerousness. We reject this argument for at least the following reasons. The State fails to come to grips with the fact that the State never alleged dangerousness in the circuit court, neither in its petition nor in argument to the court. Further, on appeal, the State does not explain how further proceedings in the circuit court following remand to address dangerousness could now be conducted in a manner consistent with statutory requirements, given that Wilhite was discharged from his commitment in June 2025. Accordingly, we remand to the circuit court with directions to vacate its order revoking Wilhite's conditional release.

¶64 In sum, we conclude that WIS. STAT. § 971.17(3)(e) is facially unconstitutional to the extent that it allows for the commitment of a conditionally released NGI acquittee without a finding of dangerousness. We also conclude that

---

person be placed in an appropriate institution under [WIS. STAT. §] 51.37(3) until the expiration of the commitment or until again conditionally released under this section.

33

the unconstitutional provisions in § 971.17(3)(e) are severable, leaving in place and operative the remainder of the statute, which requires a finding of dangerousness before a conditionally released NGI acquittee may be committed.

## CONCLUSION

¶65 For the reasons stated above, we reverse and remand to the circuit court with directions to vacate the order revoking Wilhite's conditional release and committing him to institutional care.

*By the Court.*—Order reversed and cause remanded with directions.

Recommended for publication in the official reports.